## HOLLIS *v.* LAMB.

1. Active and bona fide efforts on the part of a plaintiff in fi. fa. to enforce his execution by any appropriate legal proceedings are, if duly taken, sufficient to prevent the dormancy of the judgment on which it issued ; and in order to have this effect it is not necessary that any entry relating to such efforts, other than those otherwise required or authorized to be made on the execution, shall be entered either on the execution itself or the execution docket of the court in which the judgment was rendered.

2. Even if the defect in the levy in the present case was not amendable, it was cured by the recital in the claim affidavit.   The previous levy on personal property of one of the defendants was properly accounted for by the evidence.

3. The court erred in dismissing the levy.

Submitted November 23, 1901. — Decided February 7, 1902.

Levy and claim.   Before Judge Butt.   Taylor superior court.   April 2, 1901.

*Bull & Lawrence, R. S. Foy,* and *J. H. Martin,* for plaintiff.
*O. M. Colbert* and *A. P. Persons,* contra.

LITTLE, J.   On the 7th day of June, 1886, Hodgkins, cashier, obtained a judgment in the city court of Macon against Barfield, Gilmore, Reid, and Garrett, for the principal sum of three hundred dollars, besides interest, cost, etc.   On this judgment execution

was issued on the 13th day of November, 1886, which was subsequently transferred to Hollis. Certain entries appear on the execution, as follows: A levy of the same, December 4, 1886, by the sheriff of Taylor county, on certain lands in that county as the property of Garrett, an entry of sale under that levy, and a credit of $8.10, January 4, 1887. The execution also bears the indorsement of an entry on the general execution docket of Taylor county, June 15, 1893, and on the general execution docket of Macon county on June 19, 1893. Also a levy on a certain stock of merchandise, etc., in Macon county, as the property of Gilmore, dated February 17, 1897. The execution was, on the 9th day of May, 1898, levied by the sheriff of Taylor county on certain other lands in that county as the property of Garrett; and to this last levy J. C. Lamb interposed a claim. On the call of the case and before issue was joined, the claimant made a motion to dismiss the levy, on three grounds: first, that the judgment on which the execution was issued was dormant, because more than seven years had elapsed between the last entry thereon and the levy to which the claim was interposed; second, because there appeared on the execution an entry of a levy on personal property, made in Macon county, and it did not appear what disposition had been made of the same; and third, because the entry of levy to which the claim was interposed failed to show in what county the lands levied upon were located. In resistance to that motion the plaintiff in fi. fa. introduced in evidence a certified copy of a record from the superior court of Macon county, by which it appeared that Sheffield & Company filed a petition against the sheriff of Macon county, asking for a rule requiring him to pay over to the plaintiffs certain moneys which he had in his hands, and which arose from the sale of lands in Macon county as the property of Reid, one of the defendants in fi. fa. This petition was filed on November 13, 1893. A rule nisi was granted, and the sheriff answered the same on November 21, 1893, admitting the sale of the property of Reid and the collection of the purchase-price, and setting out the fact that he had in his hands other fi. fas. claiming the money (among them being the one that was levied in the present case), and asking for the direction of the court as to the disposition of the fund; and a judgment of the court was had, directing him to pay over the fund to Marshall, the plaintiff in another fi. fa. in the sheriff's hands. Plaintiff in execution also

introduced in evidence certified copies of the record from Macon superior court, showing that Everett, Ridley, Ragan Company had filed a claim to a certain stock of merchandise, etc., in the town of Oglethorpe, Macon county, Georgia, upon which the execution in the present case had been levied on February 17, 1897, as above set out; and also a judgment of the court dismissing that levy, dated November 8, 1897. The plaintiff also moved to allow the sheriff to amend his entry of levy in the present case by an entry that the land levied on was in Taylor county. This the judge refused to allow, and then sustained plaintiff's motion to dismiss the levy on all the grounds taken, and judgment was had accordingly. The plaintiff in fi. fa. excepted to the refusal to allow the sheriff to amend his levy, and to the order of the judge dismissing the same.

It is entirely immaterial, under the facts of the present case, whether the levy showed that the lands levied on were or were not in Taylor county. The entry of levy was made by "M. L. Riley, sheriff," and described the lands as being in the "12th district of said county." The claim affidavit made by Lamb, and which was a part of the record of the case, shows on its face that it was made in Taylor county, Georgia. It recites that Riley, sheriff of said county, had levied on these lands, which were in the 12th district of said county. Therefore this defect in the levy was cured by the recital in the claim which was filed, and rendered certain the locus of the land, and the county of which Riley was sheriff, even if the levy was not properly amendable. There was no merit in the ground of the motion to dismiss because there was a levy on personal property of one of the defendants, unaccounted for. The record introduced showed clearly that this property so levied on was claimed by a third party, and that an adjudication was had that the property was not subject to the fi. fa. in the present case. This brings us to the only material question in this case, and that is whether, under the circumstances shown by the entries on the execution, and the records from Macon superior court, the judgment was dormant.

It does not affirmatively appear that any of the various entries of levy on the execution were in fact copied upon the execution docket of the city court of Macon, in which the judgment upon which this execution was issued was obtained. It is made the duty of the clerk of that court to enter the execution upon the execution docket of that court, and it appears from an inspection of the execu-

tion that in the items of cost the clerk has entered and charged the sum allowed by law for entering the execution on that docket. So we can legally assume that he has complied with his official duty, and that the execution when issued was entered on the execution docket of the city court of Macon. It is, however, insisted that under the Civil Code, § 3761, two requirements must be met within each period of seven years, to prevent the judgment upon which the execution issued from becoming dormant: first, there must be a legal and proper entry upon the fi. fa., by an officer authorized to execute and return the same; and second, the recording of such entry upon the execution docket of the court from which the execution issued. If this is a correct interpretation of the statute, then it is apparent that the execution now under consideration is dormant, and the levy should have been dismissed for that reason; for more than eleven years had elapsed from the date of the issuance of the execution until the date of the levy under which the claim was filed. While there was an entry in 1887, and one in 1897, it does not appear that either of these entries was transferred to the execution docket of the court from which the execution issued. The section referred to declares, in part, that no judgment shall be enforced "when execution has been issued and seven years have expired from the time of the record, upon the execution docket of the court from which the same issued, of the last entry upon the execution made by an officer authorized to execute and return the same;" and if this declaration must be literally enforced, the contention is right. In order, however, to arrive at its proper interpretation, we find it necessary to review previous statutes on the subject of the dormancy of judgments, and ascertain the rulings which have heretofore been made by this court in construing these statutes. By an act of the General Assembly approved December 22, 1823 (Cobb's Digest, 498), it was declared that "All judgments that have been obtained since the said 19th day of December, 1822, and all judgments that may be hereafter rendered in any of the courts of this State, on which no execution shall be sued out, or on which executions, if sued out, no return shall be made by the proper officer for executing and returning the same, within seven years from the date of the judgment, shall be void and of no effect." While this act of 1823 does not require entries made by the levying officer to be entered upon the execution docket, it does require them to be made

on the execution within each period of seven years, in order to prevent the dormancy of the judgment; and this court in the case of *Booth* v. *Williams*, 2 *Ga.* 252, ruled that a return must be made by the proper officer on such execution every seven years, or it will be presumed to have been satisfied and fraudulently kept open.

But in the case of *Wiley* v. *Kelsey*, 3 *Ga.* 274, it was ruled that " If an execution is not barred under the dormant-judgment act, at the time it comes into court to claim money, the statute can not subsequently attach, pending the litigation respecting the distribution of the fund." This was the interpretation of an act which declared that the execution would be void and of no effect unless a return was made on it by a proper officer within seven years from the date of the judgment. The section of the code we are considering contains practically the same provision, and it seems that it should have a similar construction. In *Ector* v. *Ector*, 25 *Ga.* 274, Judge Lumpkin, in delivering the opinion of the court, gave the reason for this ruling, in the following words : " This court when the dormant-judgment act first came before it for construction, following the lead of the judges in convention, departed from the letter of the statute, and interpreted it by its reason and spirit." In enacting a general limitation law the General Assembly, by an act approved March 6, 1856, practically re-enacted the act of 1823. It declared, on page 234 (Acts 1855–6), that no judgment thereafter obtained in the courts of this State should be enforced after the expiration of seven years from the time of its rendition, when no execution had been issued upon it, and, when execution had been issued, after the expiration of seven years from the time of the last entry upon the execution by an officer authorized to execute and return the same. And so the law stood until the adoption of the act of 1885, to which reference will hereafter be made. The act of 1855 was incorporated in all the Codes prior to 1895, and will be found in section 2914 of the Code of 1882. As to this act, in the case of *Nelson* v. *Gill*, 56 *Ga.* 536, Judge Jackson, in delivering the opinion of this court, said, " If we should confine ourselves to the words of the statute, we should hold it dormant, but this court in 2d *Kelly*, and 3d Ibid. and many following cases, departed from the words, and have given the dormant acts an equitable construction." In the case of *Gholston* v. *O'Kelley*, 81 *Ga.*19, it was also ruled that " It has always been held that section 2914 of the Code [of

1882] should receive an equitable construction; and it has also been held that any public act of the plaintiff, going to show that the execution was still in life, would be sufficient to prevent its becoming dormant." Our present Chief Justice, in delivering the opinion of this court in that case, said: " As far as we can find, every time this section has been before the courts, when it was necessary to rule upon it, they have invariably held that it must receive an equitable construction. It has been held that the act was passed for the benefit of innocent purchasers and bona fide creditors; and it has also been held that any public act of the plaintiff, going to show that the execution was still in life, would be sufficient to prevent its becoming dormant;" and cited a large number of cases ruled by this court in support of the proposition enunciated.

This brings us to a consideration of the act of 1885 (Acts 1884–5, p. 95), on which section 3761 of our Civil Code is based. That act made practically but one change in the law as it then stood in relation to the dormancy of judgments, and that was that the entries made on an execution by the officer which were sufficient to prevent its dormancy should be entered upon the execution docket of the court from which it issued; and it is now declared, in that section of the code, that when seven years have elapsed from the time of the record upon the execution docket of the last entry upon the execution, made by an officer authorized to execute and return the same, the judgment shall be dormant. If the provisions of the previous law which required proper entries to be made upon the execution every seven years in order to prevent dormancy did not, under the construction of that statute by our court, render such judgment dormant in the absence of such entries when the plaintiff in fi. fa. was making public attempts to enforce his execution within the limitation, it would be inconsistent to now rule that the mere addition of a requirement that such entries should be placed upon the execution docket has abrogated the rule of equitable construction which has invariably been given to statutes in relation to the dormancy of judgments. In harmony with the spirit of the rulings heretofore made, and under the unbroken precedent giving to these statutes an equitable construction, it must be again ruled that the dormancy of a judgment is prevented either by proper entries every seven years, duly recorded on the execution docket, or by a bona fide public effort on the part of the plaintiff in fi. fa. to enforce his

execution in the courts of the country, at such times and periods that seven years will not elapse between such attempts, or between such an attempt and a proper entry; and that a true construction of section 3761 of the code is, that either proper entries on the execution duly entered on the excution docket, or bona fide attempts to enforce the same against the property of the defendant within the stated period, will be sufficient to prevent dormancy. So construed, it must be ruled that the execution in the present case was not dormant, and that the court erred in dismissing the levy.

*Judgment reversed. All the Justices concurring.*