## EASTERLIN v. NEW HOME SEWING MACHINE CO. et al.

In order to prevent dormancy of a judgment it is required that an execution shall be issued on such judgment and placed upon the execution docket within a period of seven years from the date of the rendition of the judgment; and if within such period an execution previously issued is placed on the proper docket, then the judgment does not become dormant, unless it appears that no proper entry has been made on the execution and recorded on the execution docket within seven years from the date of the entry of the execution on the docket.

It appearing that the executions of the plaintiff in error in the present case were placed upon the execution docket within seven years from the date of the judgments upon which they were issued, and that they were placed in the hands of an officer to claim the funds arising from a sale of property of defendant in fi. fa. within seven years from the date of their entry upon such execution docket, they were not dormant, and the court below erred in holding that they were.

Submitted March 1,—Decided April 25, 1902.

Money rule.　Before Judge Evans.　Tattnall superior court. April 10, 1901.

E. J. Giles and J. K. Hines, for plaintiff in error.
H. C. Beasley, contra.

LITTLE, J.　The New Home Sewing Machine Company brought. a rule against the sheriff of Tatnall county, to cause that officer, who had in his hands a named sum of money arising from the sale of certain property of W. J. Williams, to pay over the same on an execution issued on a judgment which movant had obtained against Williams on June 3, 1898.　Beasley, guardian, was made a party, and claimed that this fund should be applied to a judgment against Williams, held by her as plaintiff, which was rendered September 3, 1897.　It was made to appear that executions had been duly issued upon these judgments, which executions had been entered on the general execution docket in the office of the clerk of the superior court of Tatnall county.　J. J. Easterlin was made a party to the rule, and he claimed the fund on two judgments rendered in a justice's court of that county against Williams, each of which was rendered on February 5, 1892.　Upon each of these judgments an execution had been issued on February 18, 1892, and entered "on the execution docket and the general execution docket of the clerk of the superior court" of Tatnall county on July 1, 1898.

One of these fi. fas. bore an entry of levy upon certain personal property, dated September 5, 1897, dismissed by plaintiff November 18, 1897. This levy was never entered on the execution docket of the superior court. There was also another levy upon this fi. fa., on June 3, 1898, which was subsequently dismissed by plaintiff. Both of these levies were made prior to the time the executions were entered upon the execution docket; but neither of these entries was placed upon that docket at the time the executions were entered, but the last entry of levy was placed upon the execution docket on August 7, 1900. The other execution contained an entry of nulla bona August 3, 1892, and an entry of a receipt for costs signed by a constable on February 24, 1893. Neither of these entries was placed upon the docket at the time the execution was entered on July 1, 1898, but were subsequently entered thereon August 7, 1900. There was also an entry of levy on September 25, dismissed November 5, 1897, and an entry of levy on June 3, 1898, which was subsequently dismissed by plaintiff; also an entry of levy September 25, 1900. None of these levies appears to have been entered on the execution docket. On the trial, it was insisted that the judgments in favor of Easterlin were dormant, and the trial judge ruled that they were, "because no entry by an officer thereon had been recorded on the execution docket of the clerk of the superior court of said county within seven years from the date of such entries on said execution," the court being of the opinion that the recording of said fi. fas. on the execution docket and general execution docket of the clerk of the superior court of said county, within seven years from the date of said judgments in favor of said J. J. Easterlin against said W. J. Williams, "was not sufficient to keep said executions in life, and that the record of said executions on July 1, 1898, did not keep them in life." Thereupon the fund was ordered to be paid on the judgments in favor of the New Home Sewing Machine Company and of Beasley, guardian. This ruling is assigned as error.

The judgment complained of was error. Prior to the act approved October 15, 1885, codified in the Civil Code, § 3761, the rule of law in force, in relation to the dormancy of judgments for want of execution, was simply that no judgment should be enforced after the expiration of seven years from the time of its rendition, when no execution had been issued upon it. But this was changed by the act

above referred to, and as changed and now of force, as will be seen by reference to the section of the code cited, the rule is that no judgment shall be enforced after seven years from its rendition, when no execution has been issued upon it *and the same placed upon the execution docket.* So that a judgment is dormant even if an execution has been issued upon it within seven years from its rendition, unless the execution has been entered upon the execution docket within such time. It follows that if an execution has been issued upon a judgment within seven years from its rendition and placed upon the docket within such seven years, it is not dormant, under this provision of the law. It seems that the issuance of the execution and the placing of the same upon the execution docket need not be concurrently done, but that the mandate of the law is met if an execution previously issued within the time has been placed on the execution docket at any time within the period of seven years from the date of the rendition of the judgment. Inasmuch as the issuance of the execution does not of itself prevent dormancy, but in addition thereto its entry on the execution docket is necessary, the provisions to prevent dormancy are not completed until the entry is made. But when thus *completed*, dormancy is prevented. The second and only other provision of the statute in relation to dormancy is, that when execution has been issued, and seven years have expired from the time of the record, upon the execution docket of the court from which the same issued, of the last entry upon the execution made by an officer authorized to execute and return the same, the execution becomes dormant. If it be true that dormancy is prevented by the entry of an execution previously issued, on the docket, within seven years from the date of the rendition of the judgment, and that, after issuance and entry of execution, dormancy is further prevented by proper entries upon the execution entered on the docket within periods of seven years, then the judgments of Easterlin were not dormant. The judgments were obtained in 1892, and executions were shortly thereafter issued and were placed upon the execution docket in 1898. Such entry on the docket having been made within seven years from the date of the judgments, the statute was complied with, and a new point in the life of the judgments was established by such entry, from which to compute the period within which the judgments would thereafter become dormant. It is, however, claimed

on the part of the defendant in error that, inasmuch as seven years
had elapsed between the date of the executions and the date of
the record upon the execution docket of the entries of the officers·
made on the executions, the judgments were dormant. Not at
all. Inasmuch as dormancy of the judgments was not prevented
by the mere issuance of the executions, but in addition thereto the·
executions must have been entered within seven years from the·
date of the judgments, in order to prevent dormancy, it follows·
that no entries on the execution made before the entry on the·
docket, although copied on the execution docket under the terms·
of the act of 1885, would have prevented dormancy; even with such
entries, in the absence of the record of the execution, the judgment·
would have been dormant at the expiration of seven years from the·
date of its rendition. The true construction of the law in relation
to the dormancy of judgments is, that an execution must be issued
and entered on the docket within seven years from the date of the·
judgment. Without regard to the date of the execution, if it is so·
entered dormancy is prevented; and no matter at what time dur--
ing the period of seven years from the date of the judgment the·
entry is made, the judgment is not dormant if proper entries after
the record of the execution follow such entry and each other on
the execution and on the docket within periods of seven years.

In the case of *Kellogg* v. *Buckler*, 17 *Ga.* 187, it was ruled that
a judgment does not become dormant if there is an execution issued
from it within two years from its date, and entries by the sheriff
on the execution follow one another at intervals of less than seven
years. In delivering the opinion in that case Benning, J., cited the
act of 1822, commonly called the dormant-judgment act. It was·
provided in the 1st section of that act that a judgment should be-
come dormant when the execution had issued upon it, if no return
was made on the execution by the proper officer within seven years·
from the date of the judgment. Cobb's Dig. 498. This provision,.
however, was changed by the Code of 1863, and that part of the·
act which required a return to be made on the execution within seven
years *from the date of the judgment* was omitted, and has not since·
been incorporated in our law. In the case of *Tanner* v. *Hollings--
worth*, 41 *Ga.* 133, it was ruled that a judgment on which an exe-
cution issued within seven years from its date is not dormant if
there be a proper entry upon the fi. fa. within seven years from *its·*

date, even though the entry on the fi. fa. be more than seven years after the date of the judgment. While this case was adjudicated prior to the act of 1885, the principle ruled is wholly unaffected by that act, and is controlling in this case. In delivering the opinion in that case McCay, J., said that the object of the legislature in providing for judgments becoming dormant was not to protect the defendant, and not that he should be notified once in seven years that the judgment was claimed as existing; but that it was to protect and notify other creditors and purchasers, and that once in seven years there must be such *official* action put, as it is required to be, upon the public dockets, as will notify the world that the plaintiff claims his judgment as a subsisting one. "This claim is just as well notified to the world by the clerk's entry, that he has issued a fi. fa., as it is by the sheriff's return upon that fi. fa. Both these entries are official acts, which, if the law is complied with, are entered upon proper dockets, and are notice to any one who will take the pains to inquire at the proper place." In *Powell* v. *Perry*, 63 *Ga.* 417, it was ruled that: "Execution within seven years after judgment, the sheriff's receipt to the plaintiff for costs, entered on the execution within seven years after it issued, a sheriff's entry of nulla bona within the next seven years, and a levy within the next seven, will prevent dormancy of the judgment." Whether the judgments in this case were dormant or not did not in any manner depend upon the fact, whether seven years had expired between the date of the entry on the executions and the time of their record on the docket. It clearly appears that the executions were issued upon the judgments within seven years from their date, and that these executions were placed upon the docket within seven years, and that less than seven years elapsed between the time they were so entered and the date they were placed in the hands of the officer to claim the money arising from the sale of the property of the defendant in execution. This being true, they were not dormant, and the trial judge erred in ruling that these fi. fas. could not participate in the distribution of the fund.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*