## COLUMBUS FERTILIZER COMPANY *v.* HANKS.

A judgment rendered in a justice's court will not be kept in life and the running of the dormancy statute arrested by entries on the execution, recorded upon the general execution docket, but not recorded upon the execution docket of the superior court of the county of the defendant's residence.

Argued December 14, 1903. — Decided March 31, 1904.

Affidavit of illegality. Before J. H. Worrill, judge pro hac vice. Muscogee superior court. January 27, 1903.

*J. H. Martin* and *T. L. Bowden*, for plaintiff.
*T. T. Miller*, for defendant.

SIMMONS, C. J. A fi. fa. from a justice's court was levied upon certain personal property. The defendant filed an affidavit of illegality, alleging that the execution was proceeding illegally, for the reason that more than seven years had elapsed from the time the execution was issued before either the execution or the en-

tries thereon had been placed upon the execution docket of the superior court, and that the judgment was therefore dormant and could not be enforced by levy. The case thus made was returned to the justice's court, and thence appealed by consent to the superior court. Upon the trial the case was submitted to the judge, without the intervention of a jury, upon an agreed statement of facts. From this statement it appeared that the judgment upon which the execution was based was rendered in December, 1893; that the execution was issued March 12, 1894; that a proper return of nulla bona was made on the execution on October 12, 1894, by a proper officer; that the execution and this return of nulla bona were properly recorded on the general execution docket of the county on October 20, 1896; that a proper return of nulla bona was made on the execution on May 6, 1901; that the levy to which the affidavit of illegality was filed was made on June 5, 1901; that the execution and the entries of nulla bona were entered on the execution docket of the superior court on June 8, 1901, and that they had not been entered upon that docket prior to that time. The judge ruled that the entry of the execution upon the general execution docket "did not prevent it from being dormant when the levy was made," and therefore he sustained the illegality. To this judgment the plaintiff in execution excepted.

Under the acts of 1823 (Cobb's Dig. 498) and 1856 (Acts 1855–6, p. 234) no judgment obtained in the courts of this State could be enforced after the expiration of seven years from its rendition, when no execution had been issued, or, if the execution had been issued, after the expiration of seven years from the time of the last entry upon the execution by an officer authorized to execute and return it. By the act of 1885 (Acts 1884–5, p. 95; Civil Code, § 3761), it was enacted that no judgment should be enforced "after the expiration of seven years from the time of its rendition, when no execution has been issued upon it and the same placed upon the execution docket as now provided by law, or when the execution has been issued and seven years have expired from the time of the record, upon the execution docket of the court from which the same issued, of the last entry upon the execution made by an officer authorized to execute and return the same." This made it necessary, in order to continue a judgment in life, not only to have the entries made upon the execution but to have

them recorded in the execution docket of the court from which the execution issued. The act also provided, " That in case any execution issues from any court having no execution docket, then said record shall be made upon the execution docket of the superior court of the county where the defendant resides." Civil Code, § 3762. The justice's courts of this State have no execution docket, and to them this last provision is applicable. In 1889 the General Assembly passed "an act to provide when transfers and liens shall take effect as against third parties." Under this act deeds, mortgages, and liens of all kinds, as against innocent third parties who have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record ; the clerk of the superior court is required to keep a general execution docket, and, as against such third parties who have acquired a transfer or lien binding the defendant's property, no money judgment obtained within the county of the defendant's residence shall have a lien upon his property from the date of the rendition of the judgment, unless the execution is entered on the general execution docket within ten days from the time the judgment is rendered ; when the execution is entered after ten days, the lien shall date from such entry ; as against such third parties, no money judgment obtained in this State outside of the county of the defendant's residence shall have a lien upon his property in any other county than where obtained, unless the execution is entered upon the general execution docket of the county of his residence within thirty days from the time the judgment is rendered ; and when the execution is entered upon this docket after the expiration of thirty days, the lien dates from the entry. See Civil Code, §§ 2778–2780.

In the present case no record of the execution or of the entries thereon was made on the execution docket of the superior court until after the expiration of more than seven years from the time of the rendition of the judgment and the issuing of the execution. If the act of 1885 was not changed by the act of 1889, the judgment was clearly dormant. *Smith* v. *Bearden*, 117 *Ga.* 822. The sole question in the present case is whether the entries upon the general execution docket served to keep the judgment in life. Prior to the act of 1889 there was no general execution docket kept. When that act provided that one should be kept in each

county, this docket was not substituted in lieu of any of those already kept, but was additional. The act did not contemplate one docket which should contain all that had been entered previously in the several dockets of the county. Each court of record had kept an execution docket as part of its records, and the act of 1889 did not change this. A plaintiff might have his execution entered upon the general execution docket or not, as he preferred. Thus the general execution docket did not show all that was shown by the other and older dockets. Again, the act of 1889 provided for the record, upon the general execution docket, of executions based on judgments obtained in other counties, and thus the general execution docket might contain matters not shown by the other dockets. The fee of the clerk for making the record upon the new docket was different from that for making entries upon the other docket. Thus we think it clear that the general execution docket was not intended as a substitute for all of the older dockets. Nor do we think that the act of 1885, as to the dormancy of judgments, was affected by it. The act of 1889 contained an express provision that "nothing in this act shall be construed to affect the validity or force of any deed, or mortgage, or judgment, or other lien of any kind, as between the parties thereto." Civil Code, § 2781. The dormancy of a judgment may be taken advantage of by the defendant as against the plaintiff or his assigns, and, therefore, affects the validity and force of the judgment. "An entry made by a proper officer upon an execution issued from a judgment, unless recorded upon the execution docket of the court from which the execution issued, will not, even as between the parties to the judgment, arrest the running of the dormancy statute." *Nowell* v. *Haire*, 116 *Ga.* 386. "A judgment is enforced against the defendant therein," and the act of 1885 provides that no dormant judgment "shall be enforced," and this is true without regard to whether the rights of third persons may be affected. Ibid. If the act of 1889 did not affect the validity or force of the judgment as between the parties, it could not affect the question as to whether the judgment was dormant, and that question must be determined without regard to it. The act of 1885 was, therefore, not changed or modified by the act of 1889. This view of the matter was taken by the codifiers of the Civil Code and by the General Assembly; for the provisions of both acts

are embodied in that code, evidencing a belief that both were of force. The act of 1889 merely made provision as to when transfers and liens should take effect as to third parties without notice. The general execution docket was made the means of giving notice of judgment liens by affecting third persons with notice of executions properly recorded therein. To this extent the act was well within the scope of its title. Had the act contained provisions affecting the validity or force of judgments as between the parties, it might well have been held that such provisions were unconstitutional as being beyond what was covered by the title. For these reasons we think that the act of 1889 must be held merely to fix the time when transfers and liens shall become effective as against third parties without notice, and to have no effect upon the validity and force of the judgment as between the parties thereto, or upon the question of its dormancy.

It was argued, however, that the placing of the execution and the entries thereon upon the general execution docket was such a public act as would prevent the judgment from becoming dormant. This is not true. Under the ruling in *Hollis* v. *Lamb*, 114 *Ga.* 740, a judgment may be prevented from becoming dormant either by proper and timely entries on the execution, duly recorded on the execution docket of the court from which it issued, or by active and bona fide efforts on the part of the plaintiff to enforce his execution by appropriate legal proceedings, duly taken. In the opinion it was said that "the dormancy of a judgment is prevented either by proper entries every seven years, duly recorded on the execution docket, or by a bona fide public effort on the part of the plaintiff in fi. fa. to enforce his execution in the courts of the country at such times and periods that seven years will not elapse between such attempts or between such an attempt and a proper entry." The mere record of an entry on the general execution docket is not an effort to enforce the execution; but a mistaken attempt to keep the judgment alive. Such a record is not such an active and public effort as was contemplated by that decision, and can not be considered as sufficient to keep the judgment in life, especially as it is done under an act which by its express terms does not affect the validity or force of the judgment as between the parties thereto. The present case is clearly distinguishable for another reason. *Hollis* v. *Lamb* was put on the ground

that the act of 1885 did not affect the question whether dormancy had been prevented by public efforts to enforce the execution in the courts of the country, but did make it necessary to properly record any *entry* which was relied upon to prevent dormancy. "That act," said Little, J., "made practically but one change in the law, . . and that was that the entries made on an execution by the officer, which were sufficient to prevent its dormancy, should be entered upon the execution docket of the court from which it issued; and it is now declared . . that when seven years have elapsed from the time of the record upon the execution docket of the last entry upon the execution, made by an officer authorized to execute and return the same, the judgment shall be dormant." In other words, the act of 1885 was held to apply to entries on the execution and to make their record necessary to arrest the running of the dormancy statute, but not to apply to those other acts which by reason of their public character serve to keep the judgment alive. To hold now that the entries on the execution can be effective although not recorded in the manner prescribed would be to render the act of 1885 meaningless and nugatory. If that act means anything, it is that entries on an execution can not serve to keep the judgment in life unless the entries are properly recorded. We hold that the record of the execution and the entries thereon upon the general execution docket was insufficient to prevent the judgment from becoming dormant; that the judgment was dormant when the execution was levied; and that the judge below was right in holding that it could not be enforced by levy.

*Judgment affirmed. All the Justices concur, except Lamar, J., disqualified, and Candler and Turner, JJ., who dissent.*

TURNER, J. The act of 1822 was entitled "an act to amend the 26th section of the judiciary act passed 16th day of December, 1799, and also to prevent the fraudulent enforcement of dormant judgments." The preamble recites that "dormant judgments, by being collusively kept open, are made the instruments of fraud on innocent purchasers, and often operate oppressively on vigilant and bona fide creditors." The 3d section of the act declared that "all judgments upon which no execution shall be issued, or on which no return shall be made on the execution, shall be void and of no effect." This section of the act was amended

in 1823, by adding a proviso to the effect that judgments might be renewed, or revived. This court, in an opinion from which the foregoing statement is taken, construing the acts according to their spirit and intention, held that "they contemplate no benefit to the defendant, but aim at the protection of innocent purchasers and vigilant and bona fide creditors from fraud. *Lockwood* v. *Barefield,* 7 *Ga.* 393, *Butt* v. *Maddox,* 7 *Ga.* 500, and subsequent cases to same effect. This view of the court, following the reason and spirit of the legislation, was reached though the acts declared that "judgments upon which no execution shall be issued, or on which no return shall be made on the execution within seven years from the date of the judgment, shall be void and of no effect." The 8th section of the limitation act of March 6, 1856, re-enacts the acts of 1822 and 1823, substantially, the provision that the judgments shall be null and void being changed into a provision that such judgments shall not be enforced. All the codes prior to the present code contained this section of the general limitation act of 1856: "No judgment hereafter obtained in the courts of this State shall be enforced after the expiration of seven years from the time of its rendition, when no execution has been issued upon it; or when execution has been issued and seven years have expired from the time of the last entry upon the execution made by an officer authorized to execute and return the same." Code of 1882, § 2914 (2863), (2855). And yet this court in 1888, considering the history of this law and its reason and purpose, held that a judgment could be enforced when there had not been within the period of seven years any entry upon it by an officer authorized to execute and return the same, but only a receipt by a notary public of his costs. *Gholston* v. *O'Kelley,* 81 *Ga.* 19. The court said, in that case: "It has always been held that § 2914 of the code should receive an equitable construction; and it has also been held that any public act of the plaintiff, going to show that the execution was still in life, would be sufficient to prevent its becoming dormant." And in the opinion many cases are cited by the learned Justice rendering the decision of the court. *Wiley* v. *Kelsey,* 3 *Ga.* 274; *Worthy* v. *Lowry,* 19 *Ga.* 517; *Ector* v. *Ector,* 25 *Ga.* 274; *Clark* v. *Feagan,* 42 *Ga.* 269; *Thrasher* v. *Foster,* 42 *Ga.* 212; *Water Lot Co.* v. *Bank of Brunswick,* 53 *Ga.* 30; *Nelson* v. *Gill,* 56 *Ga.*

536. A careful and discriminating statement of these cases was given in detail, and this review contained the following quotation from the case in 56 *Ga.* 536 : "Jackson, J., in delivering the opinion of the court, says : 'If we should confine ourselves to the words of the statute, we should hold it dormant, but this court, in 2 *Kelly* and 3 *Ibid.*, and many following cases, departed from the words, and have given the dormant acts an equitable construction. The principle arrived at seems to be, that, as between the plaintiff and the defendant, any record facts which go to show that the judgment creditor was active, particularly if his want of activity during any of the time was caused by the act of the defendant, would operate to save the judgment from the operation of the act, such as claiming money in court in the case in 3 *Kelly*, and any official action upon the public dockets so as to notify the world that the plaintiff claimed that his judgment was subsisting, as in 41 *Ga. Rep.* 133.'" And many other cases could be adduced of like tenor and effect.

The amendment of that section of the Code of 1882, by the act of 1885 (Acts of 1884–5, p. 95), is embodied in section 3761 of our present Civil Code. "That act made practically but one change in the law as it then stood in relation to the dormancy of judgments, and that was that the entries made on an execution by the officer, which were sufficient to prevent its dormancy, should be entered upon the execution docket of the court from which it issued; and it is now declared, in that section of the code, that when seven years have elapsed from the time of the record upon the execution docket of the last entry upon the execution, made by an officer authorized to execute and return the same, the judgment shall be dormant. If the provisions of the previous law which required proper entries to be made upon the execution every seven years in order to prevent dormancy did not, under the construction of that statute by our court, render such judgment dormant in the absence of such entries when the plaintiff in fi. fa. was making public attempts to enforce his execution within the limitation, it would be inconsistent to now rule that the mere addition of a requirement that such entries should be placed upon the execution docket has abrogated the rule of equitable construction which has invariably been given to statutes in relation to the dormancy of judgments. In harmony with the spirit of the rul-

ings heretofore made, and under the unbroken precedent giving to these statutes an equitable construction, it must be again ruled that the dormancy of a judgment is prevented either by proper entries every seven years, duly recorded on the execution docket, or by a bona fide public effort on the part of the plaintiff in fi. fa. to enforce his execution in the courts of the country, at such times and periods that seven years will not elapse between such attempts, or between such an attempt and a proper entry; and that a true construction of section 3761 of the code is, that either proper entries on the execution duly entered on the execution docket, or bona fide attempts to enforce the same against the property of the defendant within the stated period, will be sufficient to prevent dormancy." *Hollis* v. *Lamb*, 114 *Ga.* 740.    And in the first headnote of the case it is held: "and in order to have this effect [to prevent dormancy] it is not necessary that any entry relating to such efforts, other than those otherwise required or authorized to be made on the execution, shall be entered either on the execution itself or the execution docket of the court in which the judgment was rendered."    This was the unanimous decision of a full bench, as were the numerous other decisions of this court to the same effect heretofore cited.    While the section of the code under consideration on its face requires both an entry within time upon the execution and upon the execution docket of the court, this equitable construction holds that a judgment may be saved from dormancy without either an entry upon the execution or upon the execution docket of the court from which it issued.

It is true that this court, in the case of *Nowell* v. *Haire*, 116 *Ga.* 386, held that "An entry made by a proper officer upon an execution issued from a judgment, unless recorded upon the execution docket of the court from which the execution issued, will not, even as between the parties to the judgment, arrest the running of the dormancy statute." And the case of *Smith, Barry & Co.* v. *Bearden*, 117 *Ga.* 822, follows the foregoing case, merely adopting the language just quoted.    The case of *Nowell* v. *Haire* seems to be a new departure, and, without noticing the equitable rule of construction heretofore adopted by this court, is based strictly and literally on the very words of the statute.    It does not seem that the former decisions of this court establishing a different rule were, by permission of the court, expressly questioned

and reviewed; and it does not state whether it affirms, reverses, or changes the former decisions. Van Epps' Code Supp. § 6264. I therefore doubt the authority of these two decisions. According to the precedents set by this court from the earliest times, which I think are unreversed, I venture with great deference to dissent. from the opinion of the Chief Justice, and would hold that a proper entry upon an execution and the recording of such entry upon the general execution docket are such public acts, if done within time, as would, between the parties, arrest the running of the dormancy statute.