ROUNTREE, survivor, *v.* JONES.

An entry of an execution on the general execution docket will not prevent the dormancy of a judgment rendered in the superior court, where the execution has not been placed on the execution docket of that court within seven years from the rendition of the judgment.

Submitted October 19,—Decided November 20, 1905.

Petition for injunction. Before Judge Mitchell. Brooks superior court. May 27, 1905.

S. S. Rountree, as surviving partner of A. J. Rountree & Son and A. J. Rountree & Company, alleging himself to be an execution creditor of William Jones, seeks to enjoin the commission of waste by the defendant, M. F. Jones, upon land alleged to be owned by the estate of William Jones and included in a homestead which had been set apart to him and which had not terminated. On the hearing for an interlocutory injunction, the court, after considering the evidence, refused to grant an injunction, and the plaintiff assigns such refusal as error in his bill of exceptions. The controlling question is as to the dormancy of the judgments on which the plaintiff's execution issued. Three executions were tendered in evidence: (1) One in favor of A. J. Rountree & Son against Martha J. Jones and William Jones, issued from the superior court of Brooks county on February 23, 1894, based on a judgment rendered November 7, 1893, with the following entries thereon: "Entered on General Execution Docket, Feby. 23, 1894. James D. Wade, Jr., clerk." "No property to be found on which to levy this fi. fa. Feby. 11th, 1901. A. J. Conoly, Shff." "Received $10.31 from A. J. Rountree & Son, in payment of my cost. Oct. 3, 1895. J. D. Wade, Jr.,

Clk." Also, an entry of levy on land lot 494 made by the sheriff on May 2, 1905. (2) An execution in favor of A. J. Rountree & Son against Martha J. Jones and William Jones, issued from the superior court of Brooks county on February 23, 1894, upon a judgment rendered November 7, 1893, with the following entries: "Entered on General Execution Docket, Feby. 23, 1894. J. D. Wade, Jr., clerk." "No property to be found on which to levy this fi. fa. A. J. Conoly, Sheriff. Feby. 11th, 1901." (3) An execution in favor of Rountree & Company against Martha J. Jones and William Jones, issued from the superior court of Brooks county on June 13, 1891, and based on a judgment rendered May 7, 1891, with the following entries thereon: "Entered on General Execution Docket, June 13th, 1891. J. D. Wade, Jr., clerk." "Received from defendants the cost on this execution. Oct. 1st, 1894. J. D. Wade, Jr., Clk." "No property on which to levy this fi. fa. June 4, 1898. A. J. Conoly, Sheriff." "I have this day levied the within fi. fa. on the north half of lot of land No. 473 in 12th district of Brooks Co., Ga., containing 204½ acres, as the property of Wm. Jones, one of the defendants. Nov. 14, 1901. A. J. Conoly, Shff." "We, the jury, find the property not subject. C. W. Dennis, Foreman." The first-named execution, with the following entry, was entered February 11, 1901, on the execution docket of the superior court of Brooks county: "No property to be found on which to levy this fi. fa. Feby. 11, 1901. A. J. Conoly, Shff." The second execution, with the following entry, was, on February 11, 1901, recorded on the execution docket of Brooks superior court: "No property to be found on which to levy this fi. fa. A. J. Conoly, Shff. February 11, 1901." The third-named execution was, on January 1, 1899, entered on the execution docket of the superior court of Brooks county, with these entries endorsed thereon: "Received of defendants the cost on this execution. Oct. 1st, 1894. J. D. Wade, Jr., Clerk." "No property on which to levy this fi. fa. June 4th, 1898. A. J. Conoly, Sheriff."

*Felder & Rountree* and *J. D. Wade Jr.,* for plaintiff.

*L. W. Branch,* for defendant.

EVANS, J. (After stating the facts.) It will appear from the foregoing recitals that more than seven years had elapsed since the rendition of the different judgments before they were entered on

the execution docket of the superior court of Brooks county.  The judgments were therefore dormant.  "In order to prevent dormancy of a judgment, it is required that an execution shall be issued on such judgment and placed upon the execution docket within a period of seven years from the date of the rendition of the judgment."  *Easterlin* v. *Sewing Machine Co.,* 115 *Ga.* 305; Civil Code, § 3761.  When this section of the code was considered in *Hollis* v. *Lamb,* 114 *Ga.* 740, it was held that the act of 1885 (which is codified in § 3761) "made practically but one change in the law, . . and that was that the entries made on an execution by the officer which were sufficient to prevent its dormancy should be entered upon the execution docket of the court from which it issued," and that dormancy could also be prevented, without compliance with the terms of the act of 1885, if the plaintiff did any public act indicating an active and bona fide attempt to enforce his execution against the property of the defendant within the stated period.  Counsel for the plaintiff in error frankly concedes that the entry of the executions on the "general execution docket" does not meet the requirement of the Civil Code, § 3761, which requires that an execution and the entries thereon shall be placed "upon the execution docket of the court from which the same issued;" but he. does contend that the record of the executions and the entries thereon upon the "general execution docket" were such a public act as would, between the parties, arrest the running of the dormancy statute.  This identical question was before this court in the case of *Columbus Fertilizer Co.* v. *Hanks,* 119 *Ga.* 950, and was decided by a divided court.  In the opinion of the majority the ruling was announced that a judgment will not be kept in life and the running of the dormancy statute arrested by a record of an execution and its entries on the general execution docket; and further, than an entry on the general execution docket was not such a public act as would prevent the judgment from becoming dormant. The arguments supporting both the majority opinion and the dissent were forcibly presented; and the writer, after much deliberation, believes the conclusion reached by Chief Justice Simmons in the majority opinion states the correct view on this subject.

Plaintiff in error further contends that the executions were not dormant, because of the effort of the plaintiff to subject this land to the lien of his fi. fas. by an equitable proceeding which terminated

in an adverse decree in 1894. In support of this contention he refers to the following recital of fact in the bill of exceptions: "It was admitted that a bill in equity was filed by the plaintiffs, in which it was sought to subject this lot, together with other lands, to several fi. fas. of Rountree & Co. and A. J. Rountree & Son, and that by decree rendered at the May adj. term, 1894, this lot was held to be exempt from levy and sale at that time, because same was homesteaded." If this quoted extract had appeared in the bill of exceptions with nothing to indicate the contrary, it might well be assumed that the fi. fas. therein referred to were the same as the ones which are concerned in the present suit. However, the bill of exceptions shows that the definite article "the," which was therein inserted immediately preceding the words "several fi. fas. of Rountree & Co. and A. J. Rountree & Son," was stricken. No other inference can be drawn from the striking of this single word, so definite in its application, than that the fi. fas. in the present suit are not identical with any of those involved in the former equitable litigation. Had their identity appeared, perhaps this would have amounted to such an act of a public nature as would have avoided dormancy.

Something was said in the briefs about a pending claim case which would save the executions from dormancy. The only hint about a claim case was a reference, in the answer, to a claim case which was pending in the Supreme Court. The record before us does not disclose that the fi. fas. now under consideration were those under which an attempt was made to subject other land of the defendants in execution, or that the litigation arose within seven years from the date of the judgments. Hence this reference to a claim case made in the defendant's answer, standing alone, does not constitute an admission that the plaintiff took any steps towards enforcing the executions which had the effect of arresting the dormancy statute.

*Judgment affirmed. All the Justices concur, except Candler and Lumpkin, JJ., dissenting.*

CANDLER, J. I can add nothing to what was said by Mr. Justice Turner in his dissenting opinion in the case of *Columbus Fertilizer Co.* v. *Hanks,* 119 *Ga.* 955. With the views there expressed I was then, and am still, in accord; and I am therefore compelled to dissent from the judgment of the majority in the present case.