OLIVER *v.* JAMES, administratrix.

1. Under the provisions of the Civil Code, § 3761, a judgment becomes dormant when no execution is issued upon it and the same placed upon the execution docket, or when execution has issued and seven years have expired from the time of the record, upon the execution docket of the court from which the same issued, of the last entry upon the execution made by an officer authorized to execute and return the same. It is in no view a compliance with the law to have such entries recorded on the civil issue docket of the court instead of the execution docket, and such a record will not arrest the running of the dormancy statute.

2. The Civil Code, § 3763, provides that the clerk of the superior court making such entry upon the execution docket shall date said record when the same is made; therefore, in order to arrest the running of the dormancy statute by a record, on said execution docket, of an entry

made on said execution by an officer authorized to execute and return the same, the time when said record was made by the clerk of the court should appear from an inspection of the execution docket.

3. A bailiff of a county court, as provided by the Civil Code, §§ 4189, 4190, is not such an officer as is authorized to execute and return an execution issued from a justice court, or to make an entry thereon that will arrest the running of the dormancy statute.

4. It appearing from the petition filed in this case that all the executions declared on were dormant, the trial court committed no error in sustaining the demurrer.

Argued May 23,—Decided July 24, 1908.

Equitable petition. Before Judge Holden. Elbert superior court. September 11, 1907.

Z. B. Rogers and J. N. Worley, for plaintiff in error.

I. C. VanDuzer, W. D. Tutt, and Westmoreland Brothers, contra.

Judge Roan, of the Atlanta circuit, was designated to sit in this case instead of Justice Holden, disqualified.

ROAN, J. A. S. Oliver, plaintiff in error, held and was the owner of several justice-court and county-court executions, and one superior-court execution, all issuing from judgments, rendered in Elbert county, Georgia, against J. D. James. James took a homestead against his debts. After his death, his widow, Isabella T. James, elected to take a year's support. The property was sold by her as administratrix, and a sufficient sum of the money arising from said sale was claimed by Oliver to satisfy said executions. The administratrix refused payment. Whereupon Oliver brought an equitable petition against her, to enforce payment by her, from said fund, of said executions. In his petition, he fully described them, with the entries thereon, recorded upon the various execution dockets of the courts from which they issued, made in order to arrest the running of the dormancy statute. Five of said executions were issued from the county court of Elbert county in 1886. All of them had been entered upon the execution docket of said court in that year. At various times thereafter, entries appear upon each of them, made by officers authorized to execute and return them, these entries being sufficient in law to have arrested the running of the dormancy statute if they had been properly recorded on said execution docket. These entries, instead of being recorded on the execution docket, were recorded only upon the civil issue docket of said county court.

It further appears that two executions issuing from a justice's

court of Elbert county against J. D. James were included in the executions declared on in this case, one bearing date in the year 1888 and the other in 1891. They were entered on the execution docket of the superior court of said county. Also from time to time entries upon them were made by officers authorized to have executed and returned them, sufficient to have arrested the running of the dormancy statute if the entries had been recorded in time upon said execution docket. These entries appear upon the execution docket, but the time of their recordation was not marked thereon by the clerk making the record. The defendant in error insists that in order for the record upon the execution docket to have arrested the running of the dormancy .statute, it should have been dated by the clerk upon the docket at the time he made it.

Another fi. fa. included in those declared on issued from the superior court of Elbert county in the year 1896. Entries were made upon this fi. fa., every seven years, by officers authorized to execute and return it. These entries were recorded upon the execution docket, but no date appears on said docket as to when they were recorded, except the entry made on the execution on February 21, 1905, which the clerk recorded on said docket according to the date as he entered it thereon, January 8, 1906.

The only remaining execution included in those declared on issued from a justice's court of said county in 1877. Many entries appear upon said execution, some of them made by the sheriff of the county, others by the bailiff of the county court of said county. If the entries made upon said execution by the bailiff of the county court were made by an officer authorized by law to execute and return· said execution, then it is conceded that the judgment from which said execution issued is not dormant; otherwise it is dormant.

The defendant filed a general demurrer to the petition, upon the principal ground "That said petition affirmatively shows that the several judgments upon which are founded the executions declared on are dead, and of no force and effect." To the sustaining of this demurrer the plaintiff in error excepted, and this judgment is now here for review.

1. By the Civil Code, § 3761, it is declared: "No judgment shall be enforced after seven years from its rendition, when no execution has been issued upon it and the same placed upon the ex-

ecution docket, or when execution has been issued and seven years have expired from the time of the record, upon the execution docket of the court from which the same issued, of the last entry upon the execution made by an officer authorized to execute and return the same." According to this section *no judgment shall be enforced,* if it affirmatively appears that execution issued upon it, and seven years have expired from the time of the record, upon the execution docket of the court from which the execution issued, of the last entry upon the execution made by an officer authorized to execute and return the same. This statute is mandatory, and prohibits the court from enforcing a judgment where it appears that it is outlawed by the terms of the statute. We will examine and deal in this opinion with these executions and judgments in the order in which they appear to be set out in the foregoing statement of the facts.

The five executions first mentioned in a group, issued from the county court of Elbert county in 1886, were all from judgments rendered subsequently to the enactment of the dormancy statute on October 15, 1885. This act is codified in section 3761 of the Code of Georgia; therefore each of these judgments is controlled by the terms of this act. Neither of these was recorded or entered on any docket except the civil issue docket of said county court, although it appears there was an execution docket for said court. It follows that not only is each of these judgments dormant, but, as a penalty for the delay and inattention of their owners, they are sentenced by the terms of this act to the extreme penalty of the law on this subject, which is death. This court has decided, in the case of *Nowell* v. *Haire,* 116 *Ga.* 386 .(42 S. E. 719), that an entry made by a proper officer upon an execution issued from a judgment, unless recorded upon the execution docket of the court from which the execution issued, will not, even as between the parties to the judgment, arrest the running of the dormancy statute. This decision is in accordance with the statute (Civil Code, §3761), and dooms these five judgments to an everlasting sleep, more than twenty years having intervened between the issuing of the execution and an entry of any kind respecting them on the execution docket of said court.

The two executions issuing from a justice's court of Elbert county against J. D. James, one bearing date in 1888 and the other

in 1891, were entered on the execution docket of the superior court- of said county. It appears that within intervals of every seven years officers authorized to execute and return them made proper entries thereon. These entries were recorded on the execution docket by the clerk, but the time of these records does not appear upon the docket or otherwise. They were not dated by the clerk, as the law requires, and the execution docket did not affirmatively show in any way that such entries were in fact recorded on such docket within intervals of seven years. These executions were issued from judgments rendered after the passage of the act of October 15, 1885, now codified in sections 3761, 3762, and 3763 of the Civil Code. Section 3763 provides that the- clerk or the proper officer making said entry shall date said record when the same is made. This provision of the law is mandatory; and the burden is as much upon the owner of a judgment who desires to preserve its existence to see to it that the clerk dates the entry as he makes it as it is for him to see to it that the clerk enters it upon- the proper docket. Both requirements spring from the same act of the legislature; and if section 3763 can be ignored and disregarded without jeopardizing the life of a judgment, why may. not sections 3761 and 3762 likewise be disregarded without involving any hurtful consequences arising from the running of the dormancy statute? Doubtless the purpose of the framers of the act of October 15, 1885, was to have the law so changed that the execution docket of the court should affirmatively show, without further investigation or inquiry elsewhere, whether a judgment is alive, dormant, or dead. If the records of such entries, made for the purpose of keeping them in life, were not required to be dated by the clerk, as section 3763 of the code provides, the holder of an execution might, at any time after actual dormancy, revive his judgment by having the clerk enter any number of entries on the proper execution docket; and in this manner it might be possible for parties so disposed to commit the gravest of frauds, without the least fear of being detected therein. Who, from an examination of the docket, can say when they were recorded? The plaintiff does not undertake· to furnish any light on this subject. Suppose such a vital question concerning the dormancy of a judgment were left to the memory of a clerk, how often, do we imagine, could the real truth be established in a court

trying the issue, perhaps years after the entry had been made by the clerk, with no date to indicate when it occurred, nothing to rely on except a treacherous memory, with no data to refresh it, and a thousand of similar transactions intervening to aid in distracting and beclouding his mind? The legislature thought it safer, no doubt, to require him to date the time of record so the truth would be there in enduring form, long after the clerk who made it had departed from office or from life. We are satisfied the statute that requires the clerk to date such entries is a wise one, and its purpose was that the record should show when a judgment was alive, dormant, or dead. This burden is upon the one who owns the judgment, and who comes into the court asking it to be enforced. When he asks the court to enforce it, this is equivalent to affirming that it is not dormant or dead, but alive. His pleadings should contain all averments necessary to show that it was alive and enforceable; otherwise a general demurrer thereto should be sustained. Therefore, it appearing from the petition in this cause that these two executions were recorded on the proper execution docket, but the date of the record not appearing, we hold these two judgments from which these executions issued were dormant, and the court did not err in sustaining the demurrer as to them.

The next execution in the order in which they appear in the statement of facts is one issuing in 1886 from the superior court of Elbert county on a judgment rendered in 1886, nothing appearing of record on the execution docket, of any entry made on this execution by an officer authorized to execute and return the same, of date sooner than January 8, 1906. The said judgment, for the reasons assigned in dealing with the two justice-court judgments, of date respectively 1888 and 1891, likewise rendered this judgment dormant and dead, and unenforceable in the courts of this State; and the court committed no error in sustaining a demurrer as to this judgment.

The view we have heretofore expressed in this opinion in dealing with the proper construction of the dormancy statute passed by the legislature on October 15, 1885, is not only demanded by the plain letter of the statute, but is sustained by many decisions rendered by this court. The plaintiff in error asked and obtained permission from the court to review these decisions, and any other

that failed to give an equitable construction to said dormancy act, and asked upon review that all decisions of this court which strictly construe the dormancy act, and forbid the equitable construction heretofore put on it, be reviewed and reversed. These decisions cited on the brief of plaintiff in error, especially asked to be reviewed and reversed, are the following: *Hollis* v. *Lamb,* 114 *Ga.* 740 (40 S. E. 751) ; *Easterlin* v. *Sewing Machine Co.,* 115 *Ga.* 305 (41 S. E. 595) ; *Nowell* v. *Haire,* 116 *Ga.* 386 (42 S. E. 719) ; *Columbus Fertilizer Co.* v. *Hanks,* 119 *Ga.* 950 (47 S. E. 222) ; *Rountree* v. *Wilson,* 124 *Ga.* 395 (52 S. E. 325) ; *Palmer* v. *Inman,* 126 *Ga.* 519 (55 S. E. 229). A careful examination of the decisions cited, and all others sought to be reviewed and reversed, will demonstrate that if they were reversed it could in no wise be helpful or beneficial to the plaintiff in error. Even if the dissenting opinions rendered by the late Justice Turner in *Columbus Co.* v. *Hanks,* and by Justices Lumpkin and Candler in *Rountree* v. *Wilson,* supra, were set up and sustained as the law governing this case, it would in no way benefit this plaintiff, as none of these dissenting opinions undertakes to nullify, set aside, and ignore the plain letter of the law as found in sections 3761, 3762, and 3763 of the Civil Code. Equity is ancillary, not antagonistic to the law; hence equity follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable. Civil Code, §2923. There is a rule of law directly applicable in this case. It plainly pointed out to the holder of these executions, that if he wanted them not to become dormant he should have had all legal entries made upon them within the proper time entered upon certain execution dockets, and that the time these entries were made should be dated by the clerk. The plaintiff in error failed to follow this law. No valid excuse appears why he failed. Five of the executions were entered on the civil issue dockets instead of the execution docket. The plaintiff in error does not contend that this is a compliance with the letter of the statute, but he says that inasmuch as it was recording the executions on a public docket, under an equitable construction of said act it should prevent dormancy of the judgments. If the entries thereon had been recorded on a church register, this would have been a public place, but it would hardly be contended that this would in any manner have arrested the running of the dormancy statute. To

give such a construction to the act would clearly override this law. A fact worthy of note in this connection is that no decision rendered by the Supreme Court construing the act of 1885 has failed to lean to a strict construction of said act. It not being necessary in the interest of the plaintiff in error for this court to review these decisions or to reverse them, it declines at this time to enter upon this useless task.

The only remaining execution declared on in this case issued from a justice's court of Elbert county in 1877. Entries appear upon the execution from time to time, some of them made by the bailiff of the county court of Elbert county, Ga., some by various sheriffs of said county. These entries were in law sufficient to have kept the judgment in life, provided the county-court bailiff who made some of the entries had authority to execute and return the same. If the bailiff of the county court did not have authority to execute and return the same, then this judgment was dormant and dead. This judgment, antedating the dormancy statute of 1885 (Civil Code, §3761), is governed by the law as it stood in 1877. It was not necessary, in order to prevent dormancy of judgment, to enter this execution upon the execution docket. *Beck v. Hamilton*, 113 *Ga.* 275 (38 S. E. 754).

What is the proper construction of section 4189 of the Code of 1895? This section thus speaks of special bailiffs: "In cases of emergency, when more than one bailiff is necessary to attend to the business of the county judge, or there is no regular bailiff, or he is sick or absent, or for any other reason he can not conveniently attend, said county judge may appoint, by order on his docket, a special bailiff, without taking from him bond and security, but in all cases requiring the usual oath administered to constables. These bailiffs when appointed shall have the same authority to serve processes, summonses, orders, and other legal papers of the county judge, over the entire county over which the county judge has jurisdiction, as constables have in their several districts, and shall, for the county in which they are appointed, have all the rights of a constable and be liable to perform all the duties of a constable." It is insisted by the plaintiff in error, that the latter portion of this section clothes these special bailiffs with all the powers and makes them liable to perform all the duties that any constable in that county could or should perform. It

must be admitted that it is not entirely clear, from the language of this section, what the intention of the lawmakers was in enacting this law. But as the only condition upon which a county-court judge is authorized by virtue of this section to appoint a special bailiff is in cases of emergency arising, not in a justice court or elsewhere than in the affairs or business of the county court, and the appointment is made only when it is necessary for the transaction or proper disposition or handling of the business of the county court, and he is appointed solely in the interest of the business of the county court, this section, if properly construed, means that the special bailiff when appointed, the purpose being solely to discharge the duties incident to his appointment, which is the handling of such writs as issue only from the county court, shall anywhere in the county have all the rights of a constable and be liable to perform all the duties of a constable relative to all the business issuing from the county court. Thus construed, the bailiff of the county court had no authority to execute and return this justice-court execution, or to make any entry on it that would arrest the running of the dormancy statute. The codifiers evidently gave this construction to the act of 1872; for in that act the provisions now codified in section 4190 preceded immediately what is now codified in section 4189 of the Civil Code. So one of the sections as now arranged in the code, §4190, referring to the regular bailiffs of the county court, does not confer upon a regular bailiff the rights and duties of a constable over the entire county, save as to writs and processes issuing from the county court. It would be passing strange if a bailiff appointed for a special emergency arising in the county court should be clothed by virtue of that appointment with more power and dignity than a regular permanent officer of the court, bearing the same title, when he is not under bond and the regular bailiff is. The decision rendered in the case of *Oliver v. Warren,* 124 *Ga.* 550 (53 S. E. 100, 4 L. R. A. (N. S.) 1020, 110 Am. St. R. 188), decided that a bailiff of the county court of Elbert county had no authority to levy an execution issuing from a justice's court. We are asked to review this decision and reverse it. We are satisfied the decision is right and should stand; and hold that a bailiff of the county court, general or special, had no authority to levy an execution from a justice's court.

The case of *Mitchell* v. *Williams,* 36 *Ga.* 95, was decided before the act of 1872 became law; hence that decision, construing a different law, is not controlling in the matter now before the court. This court is satisfied that no error was committed by the trial court in sustaining the demurrer in this case. ·

*Judgment affirmed. All the Justices concur.*