76970. BENNETT ELECTRIC COMPANY v. SPEARS.
(373 SE2d 286)

BEASLEY, Judge.

The sole issue in this appeal, which was transferred from the Supreme Court, is whether OCGA § 9-12-60 (a) (2) refers to the general execution docket only of the county in which the original judgment was rendered or to the general execution docket of any county in Georgia.

On July 5, 1974, Bennett Electric Company obtained a judgment in the State Court of Fulton County against Spears and his company. A writ of fieri facias issued and on October 25, the execution issued on the judgment was entered on the general execution docket of Fulton County.

On February 11, 1980, and again on April 29, 1986, the execution entered on the judgment was entered on the general execution docket of Glynn County, where Spears owns property. On both occasions, a return of *nulla bona* was made by the Sheriff of Glynn County and such was entered on the general execution docket of that county. The judgment remained unsatisfied.

Spears filed a complaint seeking cancellation of the judgment as dormant in 1987. The trial court interpreted OCGA § 9-12-60 (a) (2) to require that entry on the execution be made in the county in which the judgment was rendered as referred to in subsection (a) (1) of the statute and ruled that the Glynn entries did not prevent dormancy.

Bennett argues that subsection (a) (2) means the general execution docket of *any* county in the state and not only the county in which the original judgment was rendered.

OCGA § 9-12-60 (a) provides as pertinent: "A judgment shall become dormant and shall not be enforced: (1) When seven years shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county

in which the judgment was rendered; (2) Unless entry is made on the execution by an officer authorized to levy return the same and the entry and the date thereof are entered by the clerk on the general execution docket within seven years after issuance of the execution and its record; . . ."

"In construing a statute a primary rule is that the courts must try to ascertain the purpose and intent of the legislature and then try to construe the law to implement that intent. [Cits.]" *Mullins v. First Gen. Ins. Co.*, 253 Ga. 486, 487 (322 SE2d 265) (1984). " 'The construction of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole. . . .' " *Board of Trustees &c. Fund of Atlanta v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980).

Subsections (a) (1) and (a) (2) when read together and in the context of the remainder of the statute make plain that the "entry" referred to in (a) (2) must be in the county in which the judgment was rendered. To hold otherwise would frustrate the purpose and intention of the legislature to provide, for the "protection of the public," a mechanism for notice so that any interested person could "go to the original entry of the recording of the execution and determine whether or not the execution had become dormant." *Pope v. U. S. Fid. & Guar. Co.*, 198 Ga. 304, 307 (31 SE2d 602) (1944), later appeal, 200 Ga. 69 (35 SE2d 899) (1945). Otherwise such a person would have to check the docket of all one hundred fifty-nine counties because when the statute was enacted, and still today, there was no statewide comprehensive recording system. As repeated in *Pope*, supra: " 'The construction [of a statute] must square with common sense and sound reasoning.' " Such an interpretation comports with the statute's predecessors requiring entries on the general execution docket of the originating court, to continue judgment vitality. *Neely v. Ward*, 26 Ga. App. 588 (107 SE 79) (1921); *Oliver v. James*, 131 Ga. 182 (62 SE 73) (1908). The latter case recognizes that the purpose of the framers of one of these predecessor acts was that "the execution docket of the court should affirmatively show, without further investigation or inquiry elsewhere, whether a judgment is alive, dormant, or dead." Id. at 186. It also fits in with the rest of the scheme, which in subsection (c) requires re-recording to be noted on the original execution.

Contrary to appellant's assertion, this construction works no hardship or inequity on judgment creditors in general. But all that is necessary is to record the returns from the other counties on the general execution docket of the county of the judgment-issuing court.

*Judgment affirmed. Birdsong, C. J., and Banke, P. J., concur.*

DECIDED SEPTEMBER 21, 1988.

*W. Fred Orr II, James G. Edwards II,* for appellant.
*John C. Williams, William E. Dismer,* for appellee.