No. 43.—LEROY M. WILEY, PARISH & Co. plaintiffs in error *vs.* C. & G. H. KELSEY & HALSTED, defendants in error.

CLARK & PELOT, plaintiffs in error *vs.* same defendants.

[1.] If an execution is not barred under the Dormant Judgment Act, at the time it comes into court to claim money, the statute cannot subsequently attach, pending the litigation respecting the distribution of the fund.

Dormant Judgment Act.   Before Judge FLOYD.   In Houston Superior Court.   April Term, 1847.

For the facts of the cases, and the errors assigned, see the opinion delivered by the Supreme Court.

TRACY & GRESHAM and HINES & HINES, and BLAKE, for the plaintiffs in error.

KILLEN & DENNARD, for the defendants in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

These cases having been submitted together, the facts in each being nearly identical, the same judgment will apply to both.

The plaintiffs in error, Leroy M. Wiley, Parish & Co., and Clark & Pelot, obtained judgment respectively at the April Term, 1839, of the Superior Court of Houston county, against the firm of T. & S. Williams.   Executions were issued thereon, and placed in the hands of George M. Duncan, sheriff of the county, and by him levied in August thereafter, on sundry property, real and personal, belonging to the defendants.   The following entries then appear upon each of the *fi. fas.,* namely:

"First Tuesday in October, 1839. House and lot sold for one thousand dollars to F. B. Thompson, and the stock of goods sold from month to month until the first Tuesday in January, 1840, for $———              (Signed,)

GEORGE M. DUNCAN, *Sheriff.*

"The money arising from the sale of the above, was applied to the payment of executions against the defendants, according to their respective dates and amounts;" which gave to one of the *fi. fas.* $184, and to the other $182.

There is a slight discrepancy in the testimony of George M. Duncan, respecting the date of this last entry. In one case he swears positively that it was made by him in April, 1840, when the money which he raised was distributed by order of the Court. In the other he states, that owing to the treachery of his memory, he cannot say positively whether it was made at that time or not.

At October Term, 1846, of the Superior Court of Houston county, money was brought into Court, arising from the sale of Thomas Williams' property, upon a *fi. fa.* in favour of C. &G. H. Kelsey & Halsted, against T. & S. Williams. These old executions, or rather copies, which were issued in lieu of the originals under an order of the court, were put in to claim this fund. The creditor who raised it, resisted them and tendered an issue, suggesting payment. The whole matter was continued until April, 1847, at which time this issue was withdrawn, and the right of Leroy M. Wiley, Parish & Co. and Clark & Pelot contested, upon the ground that they were barred by the dormant judgment act— more than seven years having intervened since the date of the last entry by the sheriff, upon their *fi. fas.* The Court below sustained the objection, and this decision being excepted to, it becomes our duty to review it.

The statute referred to is in these words, *i. e.*: "All judgments [1.] that have been obtained since the 19th day of December, 1822, and all judgments that may be hereafter rendered in any of the courts of this State, on which no execution shall be sued out, or which executions if sued out, no return shall be made by the proper officer for executing and returning the same, within seven years from the date of the judgment, shall be void and of no effect; *provided*, that nothing in this act contained shall prevent the plaintiff or plaintiffs in such judgments from renewing the same after the expiration of the said seven years, in cases where by law he or they would be otherwise entitled so to do, but the lien of such revived

judgments on the property of the defendants thereto, shall operate only from the time of such revival." *Prince* 458.

It is not worth while on the present occasion to discuss the policy of this law. This was fully done in a former opinion delivered by this Court in February last, at Macon. I shall content myself with considering whether or not this case comes within its provisions.

If the last entry of the sheriff, accounting for the final distribution of the money raised by him in 1839–'40, was made at April Court, 1840, as he distinctly avers to be true in Clark & Pelot's case, why then there is an end of the controversy; for the final disposition of the fund last raised, in April, 1847, was just seven years from that date. And in case of doubt upon a matter of fact like this, it would have been proper to have referred it as an issue of fact, to have been found by a jury.

·But set aside this return altogether, for uncertainty or any other cause, and how stands the case? I assume it to be incontrovertibly true, that the return next preceding this, must have been made on or before the first Tuesday in January, 1840. It carries internal conviction upon the face of it ; for it recites that the stock of goods were sold from month to month, *to that period*. Moreover, it is clear that the statement by the sheriff as to the proportion of the money which fell to such *fi. fa.* from the amount of sales could not have been made until after the conclusion of the sale in January, 1840. Taking this date, then, as a starting point, seven years had not elapsed up to October, 1846, when the fund in dispute was brought into court, and claimed under the old executions. And they continued to assert their right to it up to the decision in April thereafter. It is true that the issue of payment tendered by the Kelseys and Halsted in October, 1846, was withdrawn by them at the ensuing term, and that in the mean time the seven years had intervened. But the abandonment of this issue by them was no abandonment of their lien by Wiley, Parish & Co., and Clark & Pelot. *They were men out of court.* We do not decide, for it is not necessary, that an execution being *sub judice,* will stop the running of the statute—whether, for instance, if it had been hung up for more than seven years upon a claim, or for a length of time sufficient for the statute to attach, and the property should be found not subject, it would be a good bar to arrest any future action upon the *fi. fa.* until renewed. By analogy to the plea of the statute of limitations to actions upon notes and other instruments, it would be. And yet this case would certainly not come within the reason

and spirit of the act passed to prevent a fraudulent enforcement of dormant judgments. Even vigilant creditors and innocent purchasers could scarcely complain that the process of the court had slumbered until it had become an instrument of fraud, when it was all the while in court, busily enforcing its rights.

I repeat, however, that it is not necessary to express an opinion upon this point. It never was supposed that if suit was commenced 'upon an instrument *before* the limitation attached, that it could be arrested during its pendency and progress; and it would be necessary to go this far to justify the rejection of those old *fi. fas.* If the seven years had not run in October, 1846, when they applied through the court for this money, it surely did not after that time, as the plaintiffs never discontinued their claim, but were maintaining their right constantly up to the final adjudication against them.

We do not see, therefore, that we can do otherwise than reverse the judgment below as to the statutory bar.