### 17607. LEWIS v. MOULTRIE BANKING COMPANY.

1. The ground of the affidavit of illegality that there was an outstanding pre-existing security deed in favor of a third person to the property levied on is without merit, since the defendant in fi. fa. could not be heard to raise such a question. See also *Thompson* v. *Adams*, 157 *Ga.* 42 (120 S. E. 529).

2. The ground of the affidavit of illegality that the transfer of the fi. fa. to its present owner was not entered of record as provided for by section 1145 of the Civil Code (1910) is without merit, since such recording is not necessary to make it binding on the property of the taxpayer; nor is such recording necessary to preserve its priority, except as to subsequent bona fide purchasers for value. *Thompson* v. *Adams*, supra; *National Bank of Athens* v. *Danforth*, 80 *Ga.* 55 (4) (7 S. E. 546); *Fuller* v. *Dowell*, 85 *Ga.* 463 (2) (11 S. E. 773).

3. Under the ruling in *Norman* v. *City of Moultrie*, 157 *Ga.* 388 (121 S. E. 391), followed by this court in *Southland Investment Co.* v. *City of Moultrie*, 34 *Ga. App.* 280 (129 S. E. 288), the description of the property in the fi. fa. was not void for uncertainty.

4. There was merit in the remaining ground of the affidavit of illegality, setting up that the levy was barred by the statute of limitations, and

Executions, 23 C. J. p. 414, n. 46; p. 547, n. 66 New.
Municipal Corporations, 28 Cyc. p. 1224, n. 53, 54.
Taxation, 37 Cyc. p. 1236, n. 90.

the action of the court in overruling this ground makes it necessary to set the judgment aside.

DECIDED JANUARY 24, 1927.

Affidavit of illegality of execution; from Colquitt superior court —Judge W. E. Thomas.    July 20, 1926.

Application for certiorari was denied by the Supreme Court.

As shown by the agreed statement of facts, on March 21, 1914, the City of Moultrie made an assessment for paving and curbing a street on which property of R. E. Lewis abutted, and on September 1, 1914, a fi. fa. was issued against the described property as belonging to him.    On March 31, 1919, the fi. fa. was levied by the marshal on the lot described.    On April 4, 1919, Lewis borrowed money from the Moultrie Banking Company to take up the fi. fa., and thereupon there was a purported transfer of the fi. fa. to the banking company by the city attorney.    It was transferred to the banking company by the marshal of the city on April 15, 1925, and on the same day was levied by the marshal on behalf of the transferee; and to this levy Lewis interposed an affidavit of illegality. Upon the hearing of the issue before the judge, without the intervention of a jury, he overruled the affidavit and ordered that the fi. fa. proceed.    Exception is taken to that judgment.

*L. L. Moore,* for plaintiff in error.

*P. Q. Bryan, Hoyt H. Whelchel,* contra.

JENKINS, P. J.    (After stating the foregoing facts.)    Under the general law, as well as under a provision of the charter of the City of Moultrie, the fi. fa. issued by the city was in the nature of a tax fi. fa. and governed by the same procedure, and must be taken to be subject to the same period of limitation.    See Civil Code (1910), § 869.    Section 1147 of the Civil Code provides that "All State, county, city or other tax fi. fas., before or after legal transfer and record, shall be enforced within seven years from the date of their issue; or within seven years from the time of the last entry upon the tax fi. fa. by the officer authorized to execute and return the same, if said entry is properly entered by said officer upon the execution docket and books in which said entries are now required to be made in case of entries on executions issued on· judgments." Thus, while the fi. fa. on its face appears to be barred, the defendant in error contends that such is not the case, for two reasons: (1) because the proceeding in the instant case being one in rem,

the statutes governing the dormancy of executions has no application; and (2) because it was shown that the execution had been kept in life by a bona fide public effort to collect it. These contentions will be discussed in the order of their statement.

It is true that the proceeding in this case is, on its face, a proceeding in rem, as was held by the Supreme Court in *Norman* v. *City of Moultrie,* 157 *Ga.* 388 (2) (supra) ; but it would not seem that for this reason alone the well-recognized principle dealt with in numerous decisions of the Supreme Court, notably in the case of *Fowler* v. *Bank of Americus,* 114 *Ga.* 417 (40 S. E. 248), can be taken to have present application. In the case just cited it was held that a judgment in rem founded on the foreclosure of a mortgage does not come within the dormant-judgment act. The basis of this line of decisions is that in such a case the judgment does not create the lien, but that it arises from the contract of the parties in executing the mortgage, and that the judgment of foreclosure, the execution issued thereon, and the levy do not aid the lien, but aid only its enforcement. As was said in the *Fowler* case, "the judgment of foreclosure is merely an order authorizing the sale of the specific property mentioned in the mortgage, in satisfaction of the lien therein created, and, consequently, does not, like an ordinary judgment from which a lien arises, become dormant under the statute declaring that ordinary judgments shall become dormant under certain conditions." It will thus be seen that the idea underlying these decisions is that what liens the judgment does not give, the dormant-judgment act can not take away. Although in this line of decisions it is a necessary incident to the application of the rule enunciated that the proceeding shall be one in rem, that such is the nature of the proceeding is incidental only, and does not constitute the basis of the ruling. Counsel for the defendant in error, therefore, seek to analogize the present case to the foreclosure cases referred to, the argument being that "in the case at bar the execution is the only method of enforcing the assessment." It will be observed, however, that while it is true that the issuance of the execution and the levy thereunder are a method of enforcing the assessment, there could be no lien without the assessment, and the assessment is what creates the lien. Just as in ordinary suits the lien is created by the judgment and enforced by the execution, so in this case the lien is created by the assessment and enforced

by the fi. fa. issued thereon.   Here, contrary to what is true in a mortgage-foreclosure proceeding, there is no contractual lien, fixing a period of limitation different from that provided by the statute, to fall back on, so as to prevent the bar of the dormant-judgment act.

As to the other contention made by the defendant in error as a reason why the levy is not barred under the limitation act, we have somewhat reluctantly reached an adverse conclusion.   Under the ruling of the Supreme Court in *Hollis* v. *Lamb,* 114 *Ga.* 740 (40 S. E. 751), the holder of a fi. fa. is entitled to an equitable construction of the dormant-judgment act, and any "bona fide public effort on the part of the plaintiff in fi. fa. to enforce his execution in the courts of the country" will be sufficient to prevent dormancy.   It is true that in a sense the present holder's predecessor in title had within seven years previous to the date of the present levy sought to collect the fi. fa. by making a levy, and doubtless the levy would have proceeded but for the act of the defendant in procuring the present holder of the fi. fa. to pay off the city upon the security of its transfer.   It does not seem, however, that in a case where there is no reliance upon a compliance with the statute as to recording entries on the execution docket, anything else will suffice, even as between the parties, except the record of acts upon the public dockets of the courts, showing a bona fide public effort to collect the debt.   See, in this connection, *Nelson* v. *Gill,* 56 *Ga.* 537. 'The point seems to have been conclusively settled by what is said by the Supreme Court in *Craven* v. *Martin,* 140 *Ga.* 651 (79 S. E. 568).   In that case it appears that not only was there an entry of levy and of notice of it given to the defendant, but that there was actually a claim filed to the property levied upon, but inasmuch as the filing of the claim was subsequent to the seven-year period of limitation, the court held that even such a record entry of the claim did not constitute a bona fide public attempt to enforce the judgment.   In the discussion of that case the court said: "It is true that there is on the fi. fa. itself an entry of levy and of written notice given to the defendant of the levy. But this, after all, is a mere entry, and such entries, without some further showing as to the actual seizure of the property or of a bona fide public effort on the part of the plaintiff in fi. fa. to enforce his execution in the courts at such times and periods that

seven years will not elapse between such attempts, or between such attempts and a proper entry, will not suffice to keep the execution alive. There is nothing in the record to show, beyond the entry itself, that the notice was given to the defendant, or that a claim was filed by the defendant within seven years. The claim filed in this case was not in the record as originally transmitted to this court from the superior court; but under the authority given in Civil Code, § 6149 (4), this court directed the clerk of the superior court of Habersham county to certify and transmit the claim filed in the case; and in compliance with the order the claim was duly certified and transmitted. Upon examination of the same it appears that the claim was not filed until December, 1910. Consequently there is no sufficient evidence of any bona fide attempt to enforce the judgment against the defendant within the statutory period, and the court did not err in holding that the fi. fa. was dormant." It thus appears that when reliance is put upon the equitable construction of the dormancy act, the kind of bona fide public effort to enforce the execution in the courts contemplated by the law is such as can and must be shown by an inspection of the public records thereof.

Under the act of March 6, 1856, and prior to the acts of 1885, 1910, and 1920 (see *Hollis* v. *Lamb,* supra), it was the law that a judgment did not become dormant until after the expiration of seven years from the time of the last entry upon the execution by an officer authorized to execute and return the same. Effect would have to be given to the act of 1856, and the present statute law relative to the record of such entries would have to be ignored, in order to sustain the contention of the defendant in error, since all that it relies upon is an entry made upon the execution by an officer authorized to execute and return the same. Such an entry is still sufficient to keep the execution in life, provided the entry is made upon the execution docket every seven years, but such an entry, since the act of 1885, has never been sufficient of itself. It is not the entry, but "a bona fide public effort on the part of the plaintiff in fi. fa. to enforce his execution in the courts of the country," upon which the defendant in error relies. The entry by the city marshal certainly can not be construed to mean a proceeding in the courts of the country; and to them and their records we must look in order to ascertain if such an effort has been made.

*Judgment reversed. Stephens, J., concurs. Bell, J., disqualified.*