THE PLANTERS' LOAN AND SAVINGS BANK v. DICKINSON.

Since the adoption of the constitution of 1877, a homestead, though taken under the constitution of 1868, cannot be mortgaged for any purpose, either by the husband or by the wife who applied for the homestead out of her husband's property, he having refused to apply.

(*a*) So long as the homestead estate remains, he cannot sell without the consent of his wife, nor without an order from the judge of the superior court, nor does it seem that he can mortgage it with the consent of his wife and with an order of the judge of the superior court.

(*b*) The wife, having made such a mortgage, is not estopped from denying its validity.

(*c*) The mortgagee in this case was not such an innocent party as that the law will protect him in preference to her, since he knew when he made the contract that the constitution prohibited the incumbering of the homestead; nor does a supplemental cotemporaneous agreement signed by her, in which she agreed to use the money borrowed in purchasing supplies for the homestead of her family, aid the plaintiff, who is the transferee of the mortgage. If the articles furnished were such as are excepted in the second section of article 9, it would still be held that a mortgage could not be given on the property to secure their payment.

November 18, 1889.

Homestead. Mortgages. Estoppel. Constitutional law. Vendor and purchaser. Before Judge RONEY. Richmond superior court. April term, 1889.

Reported in the decision.

CHARLES Z. McCORD and F. W. CAPERS, Jr., for plaintiff.

TWIGGS & VERDERY, for defendant.

SIMMONS, Justice.

It appears from the record in this case that in the year 1875, Mrs. Dickinson, the defendant in error, applied to the ordinary of Richmond county for the setting aside of a homestead upon certain realty for the benefit of herself and family of minor children. It further appears in her application that her husband had refused to apply for the same, and that she applied for it out of his property. On March 25th, 1875, the ordinary granted her application. It further appears that on January 9th, 1884, Thomas P. Branch loaned Mrs. Dickinson $646.65, for which she gave her promissory note due November 15th, 1884. To secure the payment of this note, and on the same day, she executed to

Branch a mortgage on the land which had been set apart as a homestead. Cotemporaneously with the execution of the note and mortgage by Mrs. Dickinson, she entered into an agreement with Branch, in which it was distinctly stipulated that the money should be applied to the purchase of materials for the homestead premises, said materials to consist in provisions, plantation supplies and necessaries of life for herself and six children, and that in default of payment being made, the homestead premises might be sold under an execution therefor. Branch endorsed this note and discounted it to the Planters' Loan and Savings Bank, and transferred and assigned the mortgage to the bank. Mrs. Dickinson having failed to pay the note at maturity, the bank filed its petition at the October term, 1886, of the superior court of Richmond county, against her to foreclose the mortgage. The defendant demurred to the petition on the grounds (1) that the matter stated was not sufficient in law to enable the plaintiff to maintain the action, and that the cause of action as set forth was defective in that it did not show in what the homestead estate consisted; (2) that no application was ever made to the judge of the superior court for authority to sell or mortgage the homestead property, and no order was granted by the judge authorizing the mortgage; and (3) that since the adoption of the constitution of 1877, the homestead estate could not be mortgaged at all; and on the hearing of the case, the judge below sustained the demurrer upon said grounds, and particularly upon the ground that the homestead estate could not be mortgaged since the adoption of the constitution of 1877. To this decision the bank excepted.

Without discussing the correctness of the decision of the trial judge in sustaining the demurrer upon the 1st and 2d grounds, we think he was right in sustaining it upon the 3d ground. The constitution of 1877, §3, ar-

ticle 9, expressly declares that after the homestead is set apart, the debtor shall not "alienate or encumber the property so exempted, but it may be sold by the defendant and his wife, if any, jointly, with the sanction of the judge of the superior court of the county where the debtor resides or the land is situated, the proceeds to be reinvested upon the same uses." Here then is an express inhibition against the alienation or encumbering of the homestead after it is set apart. The title to this land was and is in the husband of Mrs. Dickinson. If he had applied for the setting apart of the homestead and the same had been set apart to him, this provision would have prevented him from alienating or encumbering it. He having refused to apply for the homestead, and his wife, in order to prevent the property from being sold, having applied in his stead, and it being set apart upon her application, the title was not thereby changed from the husband to the wife. The title still remained in the husband, but a new use of the property was created by the judgment of the ordinary setting apart the same as a homestead. That use was for the benefit of the wife and minor children, as long as the wife should live or so long as the children should remain minors. When the wife dies and the children become of age, the use ceases, and if the husband is still living at that time, he becomes reinvested with all the rights which he had before the homestead was set apart. He can then sell or mortgage at his pleasure. But so long as the homestead estate remains, he cannot sell without the consent of his wife, nor without an order from the judge of the superior court, nor as we now think can he mortgage it with the consent of his wife and with an order of the judge of the superior court. If, therefore, the husband who has the legal title to the land cannot mortgage it, it certainly cannot be insisted that the wife, who has

no title and only a part of the use, can do so; nor is she estopped from denying the validity of the mortgage, as was claimed by counsel for the plaintiff in error in the argument here. There is no law which will prevent her from denying her capacity to make this particular contract. She or any one else can claim the protection of the constitutional provision denying her or them the right to make such a contract. Nor is the mortgagee in this case such an innocent party as that the law will protect him in preference to her. Branch knew when he made the contract that the constitution of the State prohibited the incumbering of the homestead; nor does the supplemental agreement signed by Mrs. Dickinson, in which she agreed to use the money borrowed in purchasing supplies for the homestead of her family, aid the plaintiff in error in this case. If the articles furnished were such as are excepted in the second section of article 9, we would still hold that the head of the family could not give a mortgage on the property to secure their payment; because (1) the 3d section prohibits him from doing so; and (2) it would be entirely unnecessary, as the 2d section makes the homestead liable for taxes, "for the purchase money therefor, for labor done thereon, for material furnished therefor, or for the removal of incumbrances thereon."

For these reasons we affirm the judgment of the court below.                        *Judgment affirmed.*