## PONDER *v.* GRAFLIN.

On the evidence in the record, the court was warranted in holding that the lien of the judgment was not defeated by the possession shown in defendant in *fi. fa.* because the levy was not made within four years from the time the claimant acquired his title, the stress of the case being upon the application of section 3583 of the code to a possession held by the defendant in *fi. fa.* in three characters: first, under the homestead law; secondly, under a bond for titles from the claimant; and thirdly, under a so-called rent contract between him and the claimant. The actual holding by the defendant in *fi. fa.* was at least as much for himself as for the claimant, and quite as much in his own right.      *Judgment affirmed.*

December 28, 1891.

Title.    Liens.    Judgments.    Before Judge HUTCHINS.
Walton superior court.    August term, 1891.

A justice court *fi. fa.* in favor of Graflin, issued January 31, 1871(?), upon a judgment of January 25, 1879, against William Adcock, and upon which were entries of *nulla bona* in November, 1882, and on May 25, 1889, was levied, May 25, 1889, upon fifty acres of land as the property of defendant, which was claimed by Ponder. A verdict was returned finding the property not subject. A new trial was granted, upon the ground that the evidence did not show such adverse possession of the land in dispute in claimant for four years before the levy was made, as to defeat the lien of the judgment.    To this ruling the claimant excepted and alleged that the verdict being sustained by the evidence, the *bona fides* of the transaction being a question of fact for the jury, and two juries having found the property not subject, the verdict should not have been disturbed.

The plaintiff tendered in evidence a *fi. fa.* in favor of Lorentz & Rittler against William Adcock, with the entry upon it of a levy upon the land, December 25, 1880, upon a debt contracted in 1880.    There was evidence for plaintiff that the defendant lived on and was in possession of the land with his family for some fifteen years, making crops on it each year up to 1889, when he moved off.    One of plaintiff's witnesses testified that defendant went into possession of the land in 1868, and went out of possession in 1889, but witness did not know how he was in possession.    Witness, who was a son of Barnett Adcock, was a constable in the district part of the time, did not levy the *fi. fa.* on the land, and made entry of *nulla bona* on the *fi. fa.* because he knew defendant had not paid his (witness's) father for it and did not claim the land.

Claimant introduced a deed to this land from Barnett Adcock to Malsby & Avery dated February 3, 1881, and

recorded December 28, 1888; a quit-claim deed from them to claimant, consideration $250, dated April 14, 1884, recorded January 28, 1884(?), and reciting that it was made by direction of defendant, who held a bond for title from Malsby & Avery to the land; and a rent note from defendant to claimant for the year 1887. There was testimony to the following effect: Claimant bought the land from Malsby & Avery at the time mentioned in the deed, the sale being absolute and complete, and then and there took actual possession; defendant's possession being merely as claimant's tenant, he giving claimant his rent note and claimant paying the taxes; defendant paid none of the taxes. Defendant's tenancy continued until a few months before the levy. The consideration paid was $150 to Malsby & Avery, $100 in supplies to defendant and the surrender of notes held by claimant against defendant, amounting to $890, which is much more than the value of the land. Claimant bought the land in good faith at defendant's request. He knew of no *fi. fas.* or levies against it. He took rent notes for every year after the sale until the date of levy. He gave defendant the bond for title hereafter referred to, and took the notes mentioned, all of which he gave up to defendant after defendant left the place in 1889.

In rebuttal the defendant testified: He bought the land from Barnett Adcock, partly for cash and partly on time. Went into possession in 1868 and remained in possession with his family until the spring of 1889. The purchase price was $225, all of which he had paid before the deed was made to Malsby & Avery. Barnett Adcock never made a deed to him. About the time he paid for it he took the homestead on it, which was recorded, and Barnett said that was a sufficient deed. The way in which the deed came to be made to Malsby & Avery was, he wanted credit at their store for supplies to run his farm, and they refused him unless Barnett would

make the deed to secure them, and it was so made.   He
owed Barnett at that time $75 for borrowed money for
which Barnett was security, and Barnett refused to make
the deed until that was paid, and he made a note for
that sum and called it part of the purchase money for
this land, which note Malsby & Avery paid to Barnett
when the deed was made, and the balance of the con-
sideration of the deed was for the supplies.   He paid off
the $75.91 note early in the fall of 1881 or 1882, and by
payments on his store account with Malsby & Avery re-
duced his indebtedness to about $125, and being unable
to pay that, procured claimant to pay it and take the
·deed from them as security.   This deed last mentioned
was not an absolute sale, and the rent notes he gave
claimant were really interest on the money.   Defendant
paid taxes every year until 1888.—Plaintiff introduced
the bond for title from Barnett to defendant, dated
November 16, 1880, and conditioned to make him a deed
to this land when note for $75.91, balance of the pur-
chase money, was paid.   Also the bond for title from
claimant to defendant, made January 10, 1884, reciting
that defendant was indebted to claimant several prom-
issory notes, amounting, with $150 and interest, cash paid
Malsby & Avery, to $890.71; that claimant on April 4,
1883, according to an agreement with defendant, paid
$150 to Malsby & Avery who, by direction of defendant
who held their bond for title, made a quit-claim title to
claimant to the land; that claimant, in consideration of
this quit-claim title, agreed, in consideration of the $150
paid Malsby & Avery, to allow defendant the notes
amounting to $890.71 as full and complete payment to
defendant, who relinquished any claim that he might
have had to the land by reason of any previous payments
made on the land; that claimant further agreed to take
from defendant four promissory notes, each for $222.68,
with interest on each from January 1, 1884, and due re-

spectively November 1, 1884, 1885, 1886 and 1887, the notes payable to claimant, as purchase money of the land; and that if defendant should pay the notes when they became due, claimant would make him a quit-claim title to the land, but if he did not pay them or any of them when they became due, then this instrument and the notes to become void. Plaintiff also introduced the original homestead papers of defendant, setting apart this land under the constitution of 1868, for the benefit of his wife and four minor children; and testimony that defendant lived on this land with his family, claiming it as his own and as homestead until 1889, about which time his wife died and he moved .off; that all of his children were then of age, except one daughter who is unmarried, a minor and living with her father; and that defendant did pay Malsby & Avery the $75.91 note given to Barnett Adcock for balance of purchase money. Plaintiff also introduced a contract signed by defendant and dated February 25, 1889, which recited that in consideration of $25 to be paid by claimant to defendant's attorney, he agreed to give claimant full and immediate possession of the land "now in dispute" and to relinquish to claimant all claim " I now have on said land." In explanation of this paper there was testimony for claimant that claimant's counsel paid the sum mentioned rather than have a lawsuit; that claimant had sworn out a warrant to dispossess defendant as tenant holding over, and defendant had hired counsel to defend it, and the case was settled by claimant giving up to defendant the notes mentioned in his bond for title, and defendant then moved off the land; that one of defendant's counsel did not remember what defendant's defence was, but thought it was that defendant had paid for the land and was no tenant of claimant, and was in possession of the land as homestead and also under the bond for title from claimant.

McHenry & Walker, for plaintiff in error, cited 59 *Ga.* 443 ; 71 *Ga.* 218 ; 80 *Ga.* 409; 82 *Ga.* 373-5 ; ·85 *Ga.* 646.

James F. Rogers, *contra,* cited 83 *Ga.* 711 ; 81 *Ga.* 700 ; 80 *Ga.* 300 ; 70 *Ga.* 480, 713 ; 68 *Ga.* 491 ; 66 *Ga.* 398, 400; 61 *Ga.* 46, 469 ; 55 *Ga.* 44, 224, 383 ; 54 *Ga.* 549; 49 *Ga.* 60, 589 ; 43 *Ga.* 393 ; 5 *Ga.* 6.