PAGE *v.* JONES.

No. 12270. JUNE 17, 1938. ADHERED TO ON REHEARING, JULY 12, 1938.

*Anderson & Trapnell* and *W. T. Burkhalter,* for plaintiff in error.

*Travis & Travis* and *Kirkland & Kirkland,* contra.

HUTCHESON, Justice. A fi. fa. in favor of W. L. Jones and against Mary Holland, issued on August 15, 1918, and recorded on the same day, based upon a judgment obtained on August 5, 1918, in the superior court of Candler County, and with entries of nulla bona duly recorded on the general execution docket on October 31, 1924, and October 3, 1931, was levied, on June 8, 1937, on certain described real estate as the property of the estate of Mary Holland, deceased. Dassie Page, the daughter of Mary Holland, interposed her claim on July 2, 1937. On the trial of the case on September 21, 1937, the plaintiff introduced in evidence the fi. fa., with the entry of levy thereon, the entry reciting that the defendant in fi. fa. had died in possession of the property levied on. On the trial the claimant testified substantially as follows: I knew Mary Holland in her lifetime. She died January 29, 1935. At the time of her death she was living with me. She had been living with me since 1923, because she was disabled to see after herself. She made arrangements with me in 1914 to take care of her. In making the arrangements she made me a will. This is the paper that I call a will, and that they said was a will. That is the paper she gave to me, and that paper was delivered to me. I have not been in possession of it all the while. Under the deed exhibited to me (dated November 26, 1934), I went into possession of the property in good faith, and have so held it since I went into possession of it. I went in possession of it when I had to take mother with me to tend her. I took possession of the property when she gave it to me, because I kept up the taxes. I have been in possession of that property since the date of the will. I also hold under the deed, and have been in possession under it since the date of it. During this time we made some of the crops, farmed some of them, and then other folks would farm some. I have had the entire control and management of the place since I went in possession of it. It is my property now. I lived in Emanuel County six years, 1917 through 1922. My mother was living on the place during those years. When I returned from Emanuel County I moved to Mr. Avant's place, a mile or so from my mother's farm; but we were farming the farm at home and taking care of my mother. Will Holland did not take possession of the place then. I don't remember what

year he farmed it. He farmed the place two years for my mother, but it was with my consent. When I left Mr. Avant's place, after living there about a year, I moved to the house on the home place. I don't know when it was that Mr. Jones had possession, but he had it three years. He had it, but he did not have it three years. I think he farmed it one year. My mother died on the place, but she was living with me. The year I moved in there with mother was in 1924, and in 1923 I moved back there and moved mother with us. She had moved off, had been living with me. Mother did not live on the land all the time; wherever we worked she lived with me, and I took care of her. I don't know who Mr. Jones rented the place from. I don't know how he got the place. Will Holland rented the place from my mother, and occupied it six years while I was in Emanuel County; he was there then at home with my mother. I furnished some one to stay with her all the time. I have claimed an interest in this property from the time she willed it to me. I can not name any one I ever rented the place to. The description of the property levied on is the same property as that covered by both these papers, the deed and the one I call the will. It is all the same property.

Harvey Page, husband of the claimant, testified substantially as follows: I married Dassie Page in 1907. After our marriage, Mary Holland and my wife had some transactions about some papers relative to who should take care of Mary Holland. She made my wife this paper that my wife calls a will. My wife went into possession under this paper, and she has been in possession ever since, according to my notion. My wife has been in possession ever since this deed. Since these papers she has been in actual possession of the property, and she has been in control of it; kind of bossed you know—mistress of it you know. Nobody has worked it since these papers were made to her, without her consent. Mary Holland never asserted any right or title or claim to this property that I know of. She always said it was Dassie's; whenever anything came up she would always say, "You will have to ask Dassie." Along toward the last Mary Holland was helpless most of the time, almost two years I would say. Prior to that time Dassie and I furnished to Mary Holland money and material things of value. At different times we furnished her groceries, fed her, and gave her clothes and shoes and just whatever she needed, and money

too. She stayed with us as a member of the family, and Dassie cared for her as such. We furnished her several different times. We would give her four or five, and sometimes ten, and one time Dassie gave her fifty dollars, just to take care of her, for her benefit. That was done something like two or three years prior to her death. I don't know how much it cost Dassie to take care of her mother from the date of the will to the death of her mother. It would be a pretty big amount, because she had to feed her and clothe her and shoe her and furnish somebody to stay with her all the time for about two years. During this long period of time Mary Holland was sick at times. We had doctors lots of times, bought drugs for her. Dassie paid the doctor's bills, and was in possession of this property at the time of the death of Mary Holland. Mary Holland did not have an income except what she got from Dassie and myself. Will Holland rented the place in 1916 and 1917, I think. He paid part of the rent to Mary Holland, the other part hasn't been paid at all. In this affidavit of illegality my wife is speaking about my mother paying this debt. (The claimant was formerly a defendant in fi. fa.; but upon the filing of her affidavit of illegality, traversing the return of service and setting up other matters, the fi. fa. was "dismissed" as to her.) And she says by the lease of her place in 1918 she paid $100. Mr. Jones took over the lease and was to pay her for it, and said he would give her credit for that on the debt. It was not Mary Holland's place in 1918. When Dassie Page swore (in the affidavit of illegality) that her mother collected $100 for the rent of the place in 1918, she swore the truth. She did not claim it was Mary Holland's place. In paragraph 4 of the illegality my wife swore: "In further answer, this deponent says that Mary Holland while in life paid W. L. Jones on the said judgment the following amounts, to wit, by lease of her place for the year 1918 paid in the fall $100." We moved to Emanuel County in 1917, and stayed there seven years. We lived seven years in Emanuel County, and my wife's mother lived on the old home place, the Mary Holland place. We then moved back to this county and lived on Mr. Avant's place part of one year. As to what income Mary Holland had while she was living on the farm, besides the farm, she didn't have any. She had no income except what she got from Dassie and myself. In the illegality filed to the execution as administrator

of Mary Holland's estate I set up credits of $120 by rent of the farm in 1918; paid by rent of farm $150; yearling $50; sow and five shoats, $25; cash from sale of pinders, $15, and two cash payments totaling $75. My wife in her illegality swore that Mary Holland was paying W. L. Jones, and that in 1918 the place was Mary Holland's.

King Holland, brother of the claimant, testified substantially as follows: I remember a transaction between mother and Dassie Page in giving Dassie the place known as the Mary Holland place, where my mother lived. She gave her the place in order to take care of her, and Dassie agreed to take care of her mother, and she took charge of the place in a certain sense. She was in possession. If her mother took a notion to do a thing, she would get Dassie's consent about it. My mother said she was satisfied with the way Dassie took care of her. My mother never did exercise any acts of ownership over the place after she gave it to Dassie. My mother sold the timber off that place with Dassie's consent. I don't know who got the money; it was paid to my mother. She sold the timber in 1918. My mother did not move off that place. I can't name any one that Dassie ever rented the place to. Whenever mother would get ready to do anything about the place she would go and ask Dassie about it, and whatever Dassie said about it she would do that. She stayed with Dassie part of the time off from the old home. She rented the place to Will Holland for two years, if I am not mistaken. When Dassie was in Emanuel County mother was home some and with Dassie some.

Felix Bird testified for the claimant, that he saw Dassie Page "give her mother some money. Harvey gave it to her." He said I want you to see me give my mother some money. He did not say why he was giving it to her, just says I want you to see me give it to her.

The claimant introduced in evidence a deed executed by Mary Holland to claimant, dated November 26, 1934, recorded January 31, 1936, conveying the property levied on, and being the deed referred to in the above testimony. On the ground that the description contained therein was too vague and indefinite the court refused to permit the claimant to introduce the following instrument in evidence, being the instrument referred to by the claimant as a will:

"State of Georgia, Know all men by these presents, I, Mary Holland, of. Cobbtown, Tattnall County, Georgia, being in good health and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all former wills by me at any time heretofore made. I give to Dassie Page, her heirs and assigns, all of my land, seventy-five (75) acres, more or less, to take care of me in my last days until death. To have and to hold the same, together with all profits and income thereof, to Dassie Page, her heirs and assigns, and to her and their use and benefits forever. I have subscribed my name and affixed my seal this day of November twenty-fourth in the year of our Lord one thousand nine hundred and fourteen. Mary X Holland

her mark

"Signed, sealed, published, and delivered by the said Mary Holland, as and for her last will and testament, who at the request and in her presence and in the presence of each other have subscribed our names as witness thereto."

Then follow the names of four witnesses, one of them a notary public. This instrument was recorded in the deed records of Candler County on January 31, 1936.

The court directed a verdict for the plaintiff in fi. fa. The claimant moved for new trial on the general grounds, on the direction of the verdict, and on other grounds which appear from the opinion. The motion was overruled, and the claimant excepted.

1. An execution issued on August 15, 1918, pursuant to a judgment obtained on August 5, 1918, and duly entered on the general execution docket on the date of its issuance, and with entries of nulla bona thereon duly entered on the general execution docket on October 31, 1924, and October 3, 1931, was levied on June 8, 1937. A claim was filed on July 2, 1937. The issue thus made was tried on September 21, 1937. *Held*, that the execution was not dormant under the Code, § 110-1001.

2. A paper reciting: "I [the maker], being in good health and of sound and disposing mind and memory, do make and publish this my last will and testament, hereby revoking all former wills by me at any time heretofore made," and containing an attestation clause reciting that the paper is "signed, sealed, published, and delivered by the" maker "as and for her last will and testament," and that the witnesses, four in number, have subscribed

their names in the maker's presence and in the presence of each other, and which at the time of its execution is delivered to the party for whose benefit it is made as the will of the maker, though the devising or granting clause may contain language appropriate to a deed in some respects, is not a deed, but is an instrument testamentary in character. Code, § 113-102; *Dye* v. *Dye,* 108 *Ga.* 741 (33 S. E. 848).

3. "When any person has bona fide, and for a valuable consideration, purchased real . . property, and has been in the possession of such real property for four years, . . the same shall be discharged from the lien of any judgment against the person from whom he purchased." Code, § 110-511. While personal residence upon the purchased realty is not necessary under that section *(Hale* v. *Robertson,* 100 *Ga.* 168 (2), 27 S. E. 937), and while the defendant in fi. fa. may remain in possession as a tenant of the purchaser and such fact will not per se prevent the possession from being that required by the statute, but is merely a circumstance for the consideration of the jury in determining the bona fides of the transaction or the possession *(Edwards* v. *Stinson,* 59 *Ga.* 443 (2); *Johnson* v. *Oliver,* 138 *Ga.* 347, 75 S. E. 245), and while the fact that the defendant in fi. fa., a parent of the claimant, resided with the claimant on the premises would not of itself hinder the claimant child's possession from being exclusive, and in such case, if there be other evidence as to the character of the possession to so authorize, it would ordinarily be a question for the jury whether the possession was held jointly by both or severally by either, and, if severally, which of the two had possession and exercised acts of ownership over the property *(Blalock* v. *Denham,* 85 *Ga.* 646, 11 S. E. 1038), yet the possession required by the statute must be actual, open, notorious, in good faith, and exclusive; and to make the possession such as would displace the lien of the judgment, some sort of notice of the adverse possession should appear, or at least such circumstances as to put the plaintiff in fi. fa. on inquiry *(Cox* v. *Prater,* 67 *Ga.* 588), such as visible signs of dominion. *Hale* v. *Robertson,* supra. If it appears without conflict from the evidence that only the defendant in fi. fa. exercised acts of ownership over the premises, even though with the consent of the claimant, and that the actual holding by the defendant in fi. fa. was at least as much for herself as for the

claimant, and quite as much in her own right, such evidence would not authorize a finding that the possession was that as required by the statute. *Ponder* v. *Graflin,* 88 *Ga.* 186 (14 S. E. 203).

4. Upon application of the above principles to the evidence adduced upon the trial, the court did not err in directing the verdict finding the property subject. If by any of the evidence the possession as required by the statute was shown to exist, it was not shown when such possession was had or that such possession was had for the period of time required by the statute.

5. Nothing herein ruled shall be construed as passing upon the question whether one who is in possession of property, pursuant to a contract with the owner to support the owner in consideration of the owner executing a will devising the property to such person, becomes, by reason of such contract and the entering into the support of the owner pursuant thereto, a bona fide purchaser for value within the meaning of the Code, § 110-511.

6. While in a claim case where the only evidence introduced by the plaintiff in fi. fa. is the execution with entry of levy thereon, which entry recites that the defendant in fi. fa. died in possession of the property levied on, such entry is not evidence of that fact and would not relieve the plaintiff in fi. fa. of the onus probandi, and it is error for the judge to rule that the introduction of the execution and entry casts the burden upon the claimant *(Williams* v. *Hart,* 65 *Ga.* 201), yet where in such a case the claimant does not move for a nonsuit or dismissal of the levy, but introduces in support of her claim evidence which discloses that she claims title under and through the defendant in fi. fa., and the court directs a verdict finding the property subject, and properly so, upon the entire evidence in the case, such error is harmless and will not require a reversal of the judgment, even though, under the ruling in *Smith* v. *Haire,* 58 *Ga.* 446 (3), the omission of the claimant to move to dismiss the levy at the conclusion of the plaintiff's evidence, and the introduction of evidence by the claimant in answer to that of the plaintiff, are together or separately no admission that the plaintiff's evidence is prima facie sufficient.

7. Whether or not the court erred in refusing to admit in evidence the will of the defendant in fi. fa., on objection that the description of the property therein was too vague and indefinite, the claimant testified without objection that the property therein de-

scribed was the same as that levied on and as described in the deed from the defendant in fi. fa. to the claimant; and the evidence, considering the testimony of the claimant as true, demanding the verdict for the plaintiff in fi. fa., such action of the court, if error, shows no cause for reversal. The court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*