GENERAL DISCOUNT CORPORATION *v.* CHUNN *et al.*

No. 12761. MAY 10, 1939.

*J. B. White* and *C. C. Pittman,* for plaintiff.

*William A. Ingram,* for defendants.

DUCKWORTH, Justice. On October 2, 1926, the State superintendent of banks issued an execution for $500 against E. L. Chunn, in pursuance of an assessment against stockholders in the Bank of Cassville, then in the hands of the superintendent for liquidation. This execution was duly entered on the general execution docket of Bartow County on October 8, 1926. On April 3, 1930, an entry of nulla bona was made on the execution by the sheriff of Bartow County, but no entry was made on the general execution docket. On April 4, 1930, the Bank of Cassville, by the superintendent of banks, filed an equitable petition against E. L. Chunn in aid of the execution. It was alleged that E. L. Chunn owned the equity of redemption in a 316-acre farm which was worth about $10,000, the legal title to which farm was in the Federal Land Bank of Columbia to secure an indebtedness of $3000 due in thirty-one years; and it was prayed that a receiver be appointed to take charge of the land and administer it until petitioner's claims were satisfied, or to sell the equity of Chunn in the land. A rule nisi was issued, setting an interlocutory hearing thereon for April 18, 1930, and the petition was served on the defendant on April 5, 1930, but no hearing was had, and nothing further was done by the plaintiff in connection with the suit, which was never formally dismissed. However, the execution against Chunn showed a credit of $225 during the month of April, 1930. In 1936 E. L. Chunn sold about 25 acres of the 316-acre farm to Miss Lila L. Gilbert, and she in turn sold the land to W. S. Chunn and J. C. McTier, the claimants in the present case. In September, 1937, the judge of the

superior court of Bartow County authorized the superintendent of banks to sell at public outcry the assets of the Bank of Cassville which remained in his hands, "said assets to be sold without warranty or guaranty as to the correctness of the amounts shown, the purpose of said sale being to convey to the purchaser only such equity and title as may be held in said assets by the Bank of Cassville." In the petition for this order of sale the stock-assessment execution against E. L. Chunn was listed as being in the amount of $75. The General Discount Corporation, the plaintiff, became the owner of the Chunn execution, in pursuance of this sale. On March 22, 1938, the plaintiff had the execution levied on the tract of land which had been conveyed to W. S. Chunn and J. C. McTier, the entry of levy reciting that the land was levied on as the property of E. L. Chunn, but that it was found in the possession of W. S. Chunn and J. C. McTier. The last-named parties filed a claim to the land. They amended their claim by alleging that the execution had become dormant at the time it was levied, because more than seven years had elapsed since any entry had been made on the execution docket; and that on April 30, 1930, E. L. Chunn entered into a compromise and settlement with the superintendent of banks, whereby his liability under the execution was extinguished in consideration of the payment of $225 and the promise to pay $75 more, which latter sum was an open account and had become barred by the statute of limitations.

In March, 1938, the plaintiff filed an amendment to the suit which the superintendent of banks filed against E. L. Chunn in April, 1930, whereby the plaintiff sought to be substituted as party plaintiff in the suit, praying that W. S. Chunn and J. C. McTier be made parties defendant. The amendment was allowed, subject to demurrer. The issue made by the levy and claim was submitted to the judge for determination without a jury. On the trial documents presenting the facts stated above were introduced in evidence; and W. C. Henson testified: "That he was liquidating agent for the Bank of Cassville, and that he filed the bill against Eugene Chunn to enforce an execution in favor of the Bank of Cassville for the sum of $500; that the suit has never been dismissed or abandoned; that no agreement was made as to cancelling the said suit or settling same until the compromise offer was paid. . . He entered into a settlement compromising this suit after it

was filed, and E. L. Chunn paid all except $75 and costs. . . Mr. Chunn offered a compromise settlement, and it was accepted, but never fully paid." E. L. Chunn testified: "When the superintendent of banks sued me on April 4, 1930, and between the time the suit was filed and the date set for the hearing before the judge, the liquidating agent, and attorney of record, W. C. Henson, and I introduced an agreement compromising and settling said case for the sum of $300. I paid $225 of this sum, and told him that I had raised all the money that I could and did not know when I could pay the balance. I further told him that at the time they were settling with other stockholders for 50 cents in the dollar, and that I thought that $225 was all that I should pay. He told me that I could pay the balance if and when I got in position to do so. He and the superintendent of banks accepted the $225. That was a few days after the suit was filed. I have not paid any further sum on the settlement. I did not file a defense to the suit; and no hearing was had on the suit, because of this settlement, our agreement being to end the suit by the settlement, which was done. I did not have the suit formally dismissed. I did not know that was necessary, and I relied on Mr. Henson to handle the matter, and he told me that it was fully settled."

The judge entered judgment finding that the indebtedness had become barred, and in favor of the claimants. The plaintiff excepted.

■ An execution may be kept alive by an entry of nulla bona by the sheriff every seven years, provided such entry is also made on the general execution docket. Code, § 110-1001; *Easterlin* v. *New Home Sewing-Machine Co.*, 115 *Ga.* 305 (41 S. E. 595); *Kellogg* v. *Buckler*, 17 *Ga.* 187; *Page* v. *Jones*, 186 *Ga.* 485 (198 S. E. 63). But a nulla bona entry by the sheriff on the execution will not stop the statute from running, unless it is also made on the general execution docket. *Odum* v. *Peterson*, 170 *Ga.* 666 (153 S. E. 757); *Lathem* v. *Hester*, 181 *Ga.* 100 (181 S. E. 573). The nulla bona entry by the sheriff, not having been made on the general execution docket, did not stop the statute from running, and the execution became dormant after seven years from October, 1926, unless it was kept alive by the suit filed in April, 1930.

■ The superintendent of banks, on April 4, 1930, filed a petition seeking appointment of a receiver to take charge of certain

lands (including the land involved in the present claim case) to which the defendant in fi. fa. held the equity of redemption, for the purpose of enforcing the execution; and a rule nisi was issued, naming April 18, 1930, as the date for a hearing thereon. On the hearing of the instant claim case there was evidence from which the judge was authorized to find that, a few days after the equity suit was filed, a compromise agreement was reached whereby the defendant paid $225 and promised to pay $75 at some future time, in full settlement of the execution, and the plaintiff agreed to dismiss the suit. But the suit was never formally dismissed; and in March, 1938, the present plaintiff, after having purchased the execution in September, 1937, filed an amendment for the purpose of further prosecuting the suit. The plaintiff contends that the alleged compromise and settlement and agreement to dismiss the suit were illegal and void, because the superintendent of banks was not authorized to make such an agreement without the approval of the judge of the superior court (Code, §§ 13-807, 13-808), and that the dormancy statute did not run during the pendency of the suit. We do not deem it necessary to pass upon the legality of the alleged compromise settlement, since in any view of the case the execution had become dormant before it was levied in March, 1938. "A judgment shall become dormant and shall not be enforced, . . unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made at such times and periods that seven years will not elapse between such attempts or between such an attempt and a proper entry." Code, § 110-1001. While the action of the superintendent of banks in filing and serving the equity suit in aid of the execution in April, 1930, may have been such a "bona fide public effort" to enforce the execution as to constitute a new starting point for the running of the dormancy statute, yet more than seven years from that time had elapsed when the levy was made under the execution in March, 1938; and the execution was dormant at the time of the levy, unless there was such a pending suit as to toll the statute. In *Conley* v. *Buck,* 100 *Ga.* 187 (4) (28 S. E. 97), it was held: "Where an equitable petition was brought for the purpose of enforcing the collection of a judgment not then dormant, the filing of such petition was of itself sufficient to prevent the running of the dormancy statute as against such judgment, so long as the equitable action

was pending." Was the equitable action in the instant case still pending, within the meaning of the rule stated in the *Conley* case? We do not think it was. Although the suit was never formally dismissed, there was evidence that a few days after it was filed it was abandoned in pursuance of a compromise settlement of the execution. The conduct of both parties supports the conclusion that it was abandoned. The defendant filed no pleadings in the case. While the plaintiff prayed for a receiver, and a date for an interlocutory hearing upon the petition was set, no hearing has ever been had, and no further action has ever been taken by the plaintiff in that suit, although in the meantime the defendant conveyed to the present claimants the property levied on. In 37 C. J. 1053, § 475, it is stated: "While it has been held that the actual commencement of a suit is sufficient to stop the running of the statute of limitations, without any regard to, or dependence on, any after diligence of plaintiff in its prosecution, it seems to be well established that if a suit is voluntarily abandoned, discontinued, or dismissed, or is not proceeded with for a considerable period of time, the operation of the statute will not be suspended." By virtue of the provision that a "bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts" shall constitute a *new starting point* for the running of the dormancy statute, there would seem to be even stronger reason for holding that the rule stated above is applicable with reference to our dormancy statute. That the same principle is applicable to the doctrine of lis pendens, see *Tinsley* v. *Rice,* 105 *Ga.* 285 (31 S. E. 174). There being evidence that the suit in aid of the execution filed in April, 1930, was abandoned the same month it was filed, the court did not err in finding that the execution was dormant in March, 1938, when it was levied, and in rendering judgment for the claimants.

*Judgment affirmed. All the Justices concur.*