POPE *et al. v.* UNITED STATES FIDELITY & GUARANTY COMPANY.

No. 14980. OCTOBER 5, 1944.

C. C. *Crockett,* for plaintiffs in error.

*Nelson & Nelson,* contra.

WYATT, Justice. 1. When this case was before this court in *Pope* v. *United States Fidelity & Guaranty Co.,* supra, it was held that the petition set out a cause of action for injunction and the appointment of a receiver, and that there was no error in consolidating the equity suit and the claim case. The evidence on the trial proved the facts alleged in the petition for a receiver. There is no complaint, either in the bill of exceptions or in the brief of the plaintiff in error, that the evidence did not authorize the appointment of a receiver. The contention of the plaintiff in error, as set forth in the brief, is as follows: "The issue was the dormancy of the execution on which the plaintiff undertook to found its case and obtain equitable relief. The execution had not been kept in life, and we contend that as a matter of law verdict and judgment was demanded in favor of the defendants. The discretion of the court in granting a new trial on conflicting evidence, of course, is not involved in the case. We recognize the rule in such a case. Code, § 6-1608. We complain of an abuse of discretion." The plaintiff in error simply contends that the verdict rendered by the jury was, under the evidence, demanded as a matter of law, and, therefore, that the trial judge abused his discretion in granting a new trial. This contention is based on the position that, since the execution, the basis of the levy and

claim, had become dormant, United States Fidelity & Guaranty Company's entire case must fall as a matter of law. The execution was recorded on general execution docket, No. 19, page 225, on May 25, 1934. From the documentary evidence, the levy appears to have been recorded on May 22, 1941; but it was recorded on general execution docket No. 22, page 271. On general execution docket No. 19, page 225, this entry appears: "See general execution docket No. 22, page 271, for re-recording;" and on general execution docket No. 22, page 271, the following entry appears: "See general execution docket No. 19, page 225, for original record." It further appears that on docket No. 22, page 271, the entire execution and all entries, including the entry of levy was recorded. The clerk of the superior court testified, among other things, that, "The space was so small we could not make the entry on the old one, and we just re-recorded it on docket No. 22." This statement was borne out by the employees in the clerk's office as to why the entry of levy was entered on docket No. 22, instead of on docket No. 19. The clerk testified that on December 16, 1941, "by request we went back and tried to put the levy on the old docket, but it was practically illegible. Yes, it was written all in the crevices of the book [referring to the old docket, No. 19]." It is contended that the recording of the entry of levy on docket 22 was not a compliance with the law, because the entry of levy was not recorded on docket 19; and that the attempt of the clerk to make the entry on docket 19, under date of December 16, 1941, was too late for the reason that the execution had already become dormant. As will be noted, the period of seven years from the date of recording the execution expired on May 25, 1941. December 16, 1941, was more than seven years from the date of the original recording of the execution; but May 22, 1941, was less than seven years from that date. Therefore, the question presented is whether or not the recording of the entry of levy, as done on May 22, 1941, was such a compliance with the law as would prevent the execution from becoming dormant. So much of the Code as is here applicable reads as follows: "A judgment shall become dormant and shall not be enforced: . . 2. Unless entry is made on the execution by an officer authorized to levy and return the same and such entry and the date thereof are entered by the clerk on the general execution docket within seven years

after the issuance of the execution and its record; . . provided, that when an entry is filed for record more than seven years from the date of the execution, the execution shall be recorded with all entries thereon, but if filed within seven years, the entry shall be recorded on the original record of the execution." § 110-1001.

It is here contended, that since the entry of levy as recorded on May 22, 1941, was recorded on general execution docket 22, page 271, and not on general execution docket 19, page 255, this being the docket and page of the recording of the original execution, there was not a compliance with the requirement of the above-cited Code section that "the entry shall be recorded on the original record of the execution." Bearing in mind the testimony of the clerk of the superior court, his deputy, and another employee, to the effect that it was a physical impossibility to record the entry of levy on the original record of the execution, for want of space, and further that, when he later, by request, attempted to do so, the writing was not legible, how should this provision of the Code be construed as applied to the facts in the instant case? "A statute is never to be understood as requiring an impossibility, if such a result can be avoided by any fair and reasonable construction." Black on Interpretation of Laws, ch. 4, sec. 45. The intention of the lawmaking authority should always be kept in mind when construing statutes. "In the interpretation of a statute the courts must look diligently for the intention of the General Assembly. Penal Code, § 1. This is the cardinal rule in the construction of statutes, and the intention when ascertained must be carried into effect. *Erwin* v. *Moore*, 15 *Ga.* 361. The construction must square with common sense and sound reasoning." *Blalock* v. *State*, 166 *Ga.* 465, 470 (143 S. E. 426).

What was the purpose and intention of the General Assembly in requiring an entry of levy or other entry, the effect of which would be to prevent an execution from becoming dormant, to be entered on the original record of the execution? Simply as a protection to the public, so that any person interested could go to the original entry of the recording of the execution and determine whether or not the execution had become dormant. Here the clerk was confronted with a situation where it was a physical impossibility to comply literally with the language of the statute. He did all that he could have done—recorded the entry of levy on

the current execution docket where space was available, and then on the docket where the execution was originally entered, made an entry directing the attention of any person examining the records to the book and page of the execution docket where the entry of levy was recorded. We know of no decision, and none has been called to our attention, in which the facts are identical with those of the instant case. The plaintiff in error relies upon *Nowell* v. *Haire*, 116 *Ga.* 386 (42 S. E. 719); *Smith* v. *Bearden*, 117 *Ga.* 822 (45 S. E. 59); *Palmer* v. *Inman*, 126 *Ga.* 519 (55 S. E. 229); *Lathem* v. *Hester*, 181 *Ga.* 100 (181 S. E. 573); and *General Discount Corporation* v. *Chunn*, 188 *Ga.* 128 (3 S. E. 2d, 65). The ruling in all of those cases was simply that a failure to record the entry upon the docket of original entry within seven years, even as between the parties to the execution, would cause the execution to become dormant. They were cases in which no attempt was made within the seven-year period to have an entry recorded; the court holding that an entry on the execution, even as between the parties to the execution, unless also recorded on the execution docket, was not sufficient to prevent the execution from becoming dormant. *A. B. Farquhar Company* v. *Myers*, 194 *Ga.* 220 (21 S. E. 2d, 432), is also relied upon. In that case, "the clerk in September, 1938, entered the levy made in 1932 on page 282 of the general execution docket, wherein the execution had been recorded on page 139;" and on the same page, that is, page 282, the entry, "A. B. Farquhar Company Ltd. v. Mary Ann Waller (see fi. fa. recorded on page 139 in this book)," was made. No entry was made on page 139 where the execution was originally recorded. Therefore, the case differs in its facts from the one now under consideration. We hold that what was done by the clerk in the instant case was a substantial compliance with the provisions of the Code, § 110-1001, and was sufficient to prevent the executions in question from becoming dormant.

In view of what has been said, this being the first grant of a new trial, there was no error in granting a new trial.

*Judgment affirmed. All the Justices concur.*