**SECOND DIVISION**
**MILLER, P. J.,**
**MARKLE and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 21, 2024

# In the Court of Appeals of Georgia

A24A0502. SZYMANSKI v. TRUIST BANK.

LAND, Judge.

Timothy Szymanski appeals from the trial court's order denying his motion to vacate a judgment and writ of fieri facias against him and denying his motion to enjoin enforcement of the judgment. He argues that the judgment and fi. fa. had become dormant under OCGA § 9-12-60 (a) and was no longer enforceable against him. We agree and reverse.

The key facts are undisputed, and the only questions before us are a matter of law. Accordingly, this Court owes no deference to the superior court's ruling and applies the "plain legal error" standard of review. *Taylor v. Peachbelt Props., Inc.*, 293 Ga. App. 335, 335-336 (667 SE2d 117) (2008).

*The March 2013 fi. fa.* The record shows that in 2012, Appellee's predecessor, Sun Trust Bank, filed suit against Szymanski to recover on a promissory note. Szymanski failed to file an answer, and the Bank obtained a default judgment on March 26, 2013. The trial court issued a writ of fieri facias, which was recorded on the Superior Court of Oconee County general execution docket ("GED") the same day.

*The June 2014 Reissued fi. fa.* A year later, on May 8, 2014, the Bank filed a motion to "re-issue writ of fieri facias," alleging that the Bank mistakenly caused the fi. fa. "to be marked satisfied and cancelled" even though Syzmanski "failed to satisfy the debt due . . . and currently owes" the amount of the judgment. The motion attached an affidavit of the Bank's Custodian of Records, who averred that Syzmanski had not satisfied the judgment. Syzmanski failed file a response. On June 13, 2014, the trial court granted the motion and directed the clerk of court to reissue a fi. fa. On June 27, 2014, the reissued fi. fa. was entered into the records of the Oconee County Clerk's office ("June 2014 Reissued fi. fa."). The June 2014 fi. fa. identifies the date of judgment as June 13, 2014 (the date of the order granting the motion to reissue the fi. fa.) instead of March 26, 2013 (the date that the default judgment was entered).

*April 2018 Cancellation.* On April 2, 2018, the Bank filed a "fi. fa. Cancellation," which stated that the June 2014 Reissued fi. fa. was a duplicate and requested that the clerk cancel it. The cancellation was recorded on the Oconee County GED.

*August 26, 2020 Nulla Bona.* The fi. fa. was then sent to the Oconee County Sheriff's Office to perform a nulla bona review. This nulla bona was executed by the Oconee County Sheriff on August 26, 2020, and the entry was recorded in the GED on August 27, 2020.[1]

*The November 2022 Alias fi. fa.* On November 15, 2022, the Bank filed a "petition for issuance of alias fi. fa.," stating that the original June 2014 reissued fi. fa. "was lost or cannot be located," and requesting that an "Alias fi. fa. be issued[.]" See OCGA § 9-13-8 (a) ("When an execution which was regularly issued from a court is lost or destroyed," the trial court may "upon proper application and proof of the facts by the affidavit. . . grant an order for the issuing of an alias execution in lieu of the

---

[1] A nulla bona is a "return by a sheriff . . . upon an execution when the judgment debtor has no seizable property within the jurisdiction." *Blacks Law Dictionary* (11th ed. 2019). See Uniform Superior Court Rule 39.5 (The general execution docket shall contain all fi. fas., and nulla bonas and satisfactions are to be noted on the original entry).

lost original execution. The alias execution shall have all the legal force and effect of the lost or destroyed original execution"). The trial court granted the petition, and a second reissued fi. fa. was entered on November 29, 2022. The November 2022 Alias fi. fa. states that the underlying judgment was entered on June 13, 2014 (the date of the first reissued fi. fa. and not the original judgment).

*Garnishment and Motion to Vacate.* On October 4, 2022, the Bank filed a garnishment action against Syzmanski and his employer in the Superior Court of Barrow County.

On August 8, 2023, Szymanski filed a petition in the Oconee County Superior Court to vacate the 2013 judgment and fi. fa. against him on the grounds that it was now dormant and unenforceable. On September 13, 2023, the trial court denied the motion to vacate the judgment and to enjoin its execution. Syzmanski appeals.

1. Syzmanski argues that the trial court erred by denying his petition to vacate the March 26, 2013 judgment and fi. fa. because they were dormant under OCGA § 9-12-60. We agree.

Title 9, Chapter 12, Article 3 of the Official Code of Georgia Annotated addresses the dormancy and revival of judgments ("Revived Judgment Code"). More

specifically, OCGA § 9-12-60 (a) provides that a judgment becomes dormant and unenforceable:

> (1) When seven years shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county in which the judgment was rendered;

> (2) Unless entry is made on the execution by an officer authorized to levy and return the same and the entry and the date thereof are entered by the clerk on the general execution docket within seven years after issuance of the execution and its record; or

> (3) Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made and due written notice of such efforts . . . is entered by the clerk on the general execution docket.

OCGA § 9-12-60 (a) (1)-(3). Entry on the GED in accordance with subsection (2) or (3) of OCGA § 9-12-60 (a) "shall institute a new seven-year period within which the judgment shall not become dormant[.]" OCGA § 9-12-60 (b). See *Corzo Trucking Corp. v. West*, 296 Ga. App. 399, 401 (1) (674 SE2d 414) (2009) ("a judgment becomes dormant seven years from the date of the last entry upon the execution docket"). Once a judgment becomes dormant, OCGA § 9-12-61 provides that the

5

judgment "may be renewed or revived by an action or by scire facias, at the option of the holder of the judgment, within three years from the time it becomes dormant."[2] "OCGA §§ 9-12-60 and 9-12-61 therefore "operate in tandem as a ten-year statute of limitation for the enforcement of Georgia judgments," such that "although a judgment becomes dormant seven years from the date of the last entry upon the execution docket, it does not expire until ten years after that date." (Citation and punctuation omitted.) *First Merit Credit Svcs. v. Fairway Aviation*, 359 Ga. App. 829, 833 (2) (860 SE2d 126) (2021). The Bank did not renew or revive the judgment purusant to OCGA § 9-12-61.

In the present case, the judgment and original fi. fa. were issued on March 26, 2013. Under OCGA § 9-12-60 (a), the judgment became dormant seven years later,[3]

---

[2] "A scire facias resembles a summons and directs the defendant to appear in the issuing court on a certain date and to show cause why the identified judgment should not be revived and an execution be issued." *Popham v. Jordan*, 278 Ga. App. 254, 254-255 (1) (628 SE2d 660) (2006).

[3] Due to the COVID-19 pandemic, the Supreme Court of Georgia issued an order declaring a statewide judicial emergency and several subsequent orders which tolled "any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes . . . including, but not limited to any . . . statute of limitation" between March 14 and July 14, 2020. *Beauparlant v. Aiken*, 362 Ga. App. 341, 343 (868 SE2d 482) (2022). Application of this tolling provision would have rendered the March 26, 2013 judgment dormant on July 26, 2020.

unless the Bank executed, attempted to execute or engaged in a bona fide public effort to execute and noted such efforts on the GED. OCGA § 9-12-60 (a) - (b). See, e. g., *Malloy v. First Ga. Bank*, 178 Ga. App. 797, 797 (344 SE2d 679) (1986) (when creditor failed to prevent dormancy "by levy of execution or notice of bona fide public effort to enforce the execution as provided by OCGA § 9-12-60 (a)[,]" creditor was required to revive the dormant judgment pursuant to OCGA § 9-12-61). Here, the only entries by the Bank upon the GED during this seven-year period were the June 27, 2014 fi. fa. reissued to replace the original fi. fa. the Bank inadvertently cancelled and the April 2018 cancellation of that fi. fa.[4]

The June 27, 2014 reissued fi. fa. did not constitute a new "entry made on the [GED] by an officer authorized to levy and return the same" that would re-start the dormancy clock under OCGA § 9-12-60 (a) (2). Rather, the June 27, 2014 reissued fi. fa. had the same force and effect as the original fi. fa.. See *Edward Kellogg & Co. v. Buckler & Short*, 17 Ga. 187, 191 (1-2) (1855 WL 1752) (1855) (A fi. fa. issued by the court to replace a lost fi. fa. is one "that is to be issued ordered to stand in *lieu* of the lost original" and is an "established copy" of the original fi. fa.) (emphasis in

---

[4] The Bank does not contend that the 2018 cancellation prevented the judgment from becoming dormant, and we do not need to address that issue.

7

original); *U-Driv-It Sys. of Macon v. Lyles*, 71 Ga. App. 70, 71 (30 SE2d 111) (1944) (an alias execution in lieu of lost original fi. fa. "is in effect a copy" and has no more force than the original and is dormant and barred by statute when the original execution is dormant). OCGA § 9-12-60 (a)'s seven year deadline was not reset by the Bank's inadvertent cancellation of the original fi. fa. and the trial court's issuance of a replacement fi. fa. on June 27, 2014. Indeed, if this were the case, a creditor could continue a judgment and fi. fa. in perpetuity by cancelling a fi. fa. and requesting a new one in lieu of levying execution, filing a nulla bonna, or entering notice of a bona fide public attempt to enforce execution upon the GED as required by OCGA § 9-12-60 (a).

For the above-stated reasons, the 2013 judgment and fi.fa. became dormant on July 26, 2020. Accordingly, the Sheriff Office's nulla bona recorded on the GED on August 27, 2020 came too late and did not institute a new seven-year period under OCGA § 9-12-60. The only way around this outcome would have been for the Bank to follow the procedures set forth in OCGA § 9-12-61 to revive the judgment, a route the Bank did not take. See *Magnum Comms. Ltd. v. Samoluk*, 275 Ga. App. 177, 178 (620 SE2d 439) (2005). For the same reason, the trial court's issuance of an alias fi.

8

fa. in November 2022 also came too late and did not revive the judgment. See, e. g., *U-Drive-It Sys. of Macon,* 71 Ga. App. at 71.

In its appellate brief, the Bank argues that dormancy of its judgment was prevented by OCGA § 9-12-60 (a) (3) since it allegedly made several bona fide public efforts to enforce the judgment within seven years of its entry by filing wage garnishment actions against Szymanski in the Superior Court of Barrow County. However, the Bank has not cited to any evidence in the record in support of these allegations. Further, the Bank fails to cite to where they made any "written notice of such [bona fide public] efforts" that was "entered by the clerk on the general execution docket" in Oconee County. OCGA § 9-12-60 (a) (3). See e. g. *Bennett Elec. Co. v. Spears*, 188 Ga. App. 502 (373 SE2d 286) (1988) (OCGA § 9-12-60 (a) requires entry upon the general execution docket *in the county in which the judgment was rendered* to avoid dormancy) (emphasis supplied).

Based upon the above analysis, we conclude that the March 26, 2013 judgment and fi. fa. were dormant, unenforceable, and incapable of being revived at the time of the trial court's order giving rise to this appeal and that the trial court therefore erred

by denying Szymanski's motion to vacate the judgment and fi. fa.. We need not address Syzmanski's remaining enumeration of error.

*Judgment reversed. Miller, P. J., and Markle, J., concur.*